[S.F. No. 23098. In Bank. Oct. 2, 1974.]

FIRE FIGHTERS UNION, LOCAL 1186,
INTERNATIONAL ASSOCIATION OF FIRE FIGHTERS, AFL-CIO,
Plaintiff and Appellant, v.
CITY OF VALLEJO et al., Defendants and Appellants.

**610**

## Counsel

Davis, Cowell & Bowe, Alan C. Davis and Roland C. Davis for Plaintiff and Appellant.

Charles P. Scully, Donald C. Carroll, Bodle, Fogel, Julber, Reinhardt & Rothschild, George E. Bodle, Daniel Fogel, Stephen Reinhardt, Loren R. Rothschild and Lester G. Ostrov as Amici Curiae on behalf of Plaintiff and Appellant.

John M. Powers, City Attorney, St. Sure, Moore, Hoyt & Sizoo and Ralph B. Hoyt for Defendants and Appellants.

Burt Pines, City Attorney (Los Angeles) Lawrence L. Hoffman, Assistant City Attorney, John B. Rice and Bert Glennon, Jr., Deputy City Attorneys, John H. Larson, County Counsel (Los Angeles) Daniel C. Cassidy, Acting Chief Deputy County Counsel, Martin E. Weekes, Deputy County Counsel, Richard S. Whitmore and Gillio & Whitmore as Amici Curiae on behalf of Defendants and Appellants.

## OPINION

**TOBRINER, J.**—In this case of first impression we must delineate the function of the court in interpreting a provision for arbitration in a city charter affecting public employees. Specifically we are asked, prior to the arbitration proceeding itself, to reconcile clauses which substantively overlap: a provision that grants city employees the right to bargain on "wages, hours and working conditions" but withholds that right as to matters involving the "merits, necessity or organization of any governmental service." As we shall explain, our attempt now to define the issues of arbitration so that they assume the shape of rigid categories would be to reach premature judgments without benefit of the factual foundations of an arbitral record and to impede the arbitration process itself. We therefore largely leave to the arbitrators the moulding and resolution of the issues, subject to the proviso that neither party may be bound by a decision in excess of the arbitrators' jurisdiction.

In 1971, during negotiations between representatives of the City of Vallejo and the Fire Fighters Union as to the terms of a new contract, the parties failed to agree on 28 issues. Pursuant to the process prescribed in the city charter, they submitted the disputed matters to mediation and fact finding. When these procedures failed to effect a resolution, the city agreed to submit 24 of the issues to arbitration but contended that four other issues, namely "Personnel Reduction," "Vacancies and Promotions," "Schedule of Hours," and "Constant Manning Procedure," involved the "merits, necessity or organization" of the fire fighting service and did not come under the arbitrable provisions. The city refused to accept the recommendations of the fact finding panel with respect to these issues or to submit them to arbitration.

On December 22, 1971, prior to the scheduled hearing before the board

of arbitrators, the Fire Fighters Union filed a complaint in the Solano Superior Court seeking mandate to compel the city to submit the four disputed issues to arbitration. The court found for the union on all the issues, stating: "[T]he evidence introduced here supports findings that the issues 'Reduction of Personnel,' 'Vacancies and Promotions,' 'Schedule of Hours' and 'Constant Manning Procedures,' are related to 'wages, hours and conditions of employment' . . . . [W]hile the issues might also apply to the exclusionary language 'but not on matters involving the merits, necessity or organization of any service or activity provided by law,' to so hold would be to defeat the overriding purpose of the Meyers-Milias-Brown Act and section 809 of the Vallejo charter, namely to provide peace and harmony with the city's public safety employees. The court cannot engage in judicial legislation and write into the Vallejo charter words or meaning that are not there." The court therefore ordered that a peremptory writ of mandate issue directing the city to proceed to arbitration on the disputed issues.[1] The city appeals.

The present controversy therefore involves an interpretation of the Vallejo City Charter provisions which govern public employee contract negotiations. The provisions for multi-level resolution of disputes at issue were drafted by a board of freeholders for incorporation in a new city charter in response to a strike by city police and fire fighters in July of 1969. These proposals, with the exception of a provision for final binding arbitration, were accepted by the city council and embodied in section 809 of the city charter. Section 809 sets up a "system of collective negotiating" and provides that city employees shall have the right to "negotiate on matters of wages, hours and working conditions, but not on matters involving the merits, necessity, or organization of any service or activity provided by law. . . ." The section further provides that if the parties cannot reach agreement, they must submit successively to mediation and fact finding.[2]

---

[1]The court rejected the union's contention that the California Arbitration Act, Code of Civil Procedure section 1280 et seq., applied to this dispute, holding that it had no jurisdiction under the arbitration act and could not issue an order to arbitrate. The court upheld the writ of mandate to compel the city to arbitrate, however, because the union had no other plain, speedy and adequate remedy. Since the union did not initially seek an order to arbitrate under section 1281.2 of the act, but proceeded in the superior court with a petition for writ of mandate, we need not resolve the issue of the applicability of the California Arbitration Act.

[2]Section 809 provides: "Consistent with applicable law, the City Council shall by ordinance provide a system of collective negotiating to include:

"a. It shall be the right of City employees individually or collectively to negotiate on matters of wages, hours, and working conditions, but not on matters involving

The arbitration provisions rejected by the city council were submitted to the citizens of Vallejo in a referendum in 1970 and approved. The electorate added to the city charter section 810 which provides that if representatives of the city and its employees do not reach agreement after the report of the fact finding committee under section 809, the issues upon which they fail to agree shall be submitted to binding arbitration.[3]

the merits, necessity, or organization of any service or activity provided by law, or on any matter arising out of Sections 803(n) or 803(o) of this Charter.

"b. The City Council shall direct the City Manager and/or his designated representative(s) to negotiate in good faith with recognized employee organizations.

"c. Agreements reached between City representatives authorized in (b) above and the representatives of recognized employee organizations shall be submitted in writing to the City Council for its approval, modification, or rejection.

"d. There shall be established a timetable for the total process of collective negotiations, including mediation and fact finding, as herein provided, which will, if successful, assume a final agreement between the parties no less than 45 days before the end of the current fiscal year.

"e. If, after a period of time to be set forth in the ordinance, no agreement can be reached between City representatives authorized in (b) above and the representatives of recognized employee organizations or if the City Council refuses to ratify the agreement arrived at or modifies such agreement in any manner unacceptable to said employee organizations, the parties shall request the State Conciliation Service, or other available impartial third-party mediation service mutually acceptable to the parties, to provide a mediator in accordance with its usual procedures.

"f. If no agreement between the parties has been reached within 10 days after the date for start of mediation, a fact-finding committee of three shall be appointed to deal with the disputed issues. One member of the fact-finding committee shall be appointed by the City Council, one member shall be appointed by the recognized employee organization, and those two appointed shall name a third, who shall be the chairman. If they are unable to agree upon a third, they shall select the third member from a list of five names to be provided by the State Conciliation service. The fact-finding committee shall make public its report, with recommendations, within 30 days. The Council shall then promptly consider and act upon the report."

[3]Section 810 provides: "Consistent with applicable law, the ordinance adopted by the Council under Section 809 shall in addition include a requirement that if the parties do not reach agreement within 10 days after the report and recommendations of the fact-finding committee, the issues shall be submitted to arbitration. The Board of Arbitrators shall be composed of three persons; one appointed by the City Council, one appointed by the recognized employee organization, and those two appointed shall appoint a third, who shall be chairman. If they are unable to agree upon a third, they shall select the third member from a list of five names to be provided by the State Conciliation Service. No member of the fact-finding committee shall be a member of the Board of Arbitrators. The arbitrators shall consider all factors relevant to the isues from the standpoint of both the employer and the employee, including the City's financial condition. To the extent permitted by law, the decision of a majority of the Board of Arbitrators shall be final and binding upon the parties. The cost of arbitration shall be borne equally by all parties.

"The Council shall also provide in said ordinance that any employee who fails to report for work without good and just cause during negotiations or who participates in strike against the City of Vallejo will be considered to have terminated his employment with the City, and the Council shall have no power to provide, by rein-

The scope of bargaining provision in the Vallejo City Charter in large measure parallels that set out in the Meyers-Milias-Brown Act (Gov. Code, §§ 3500-3510).[4] Government Code section 3504 reads: "The scope of representation shall include all matters relating to employment conditions and employer-employee relations, including, but not limited to, wages, hours and other terms and conditions of employment, except, however, that the scope of representation shall not include consideration of the merits, necessity, or organization of any service or activity provided by law or executive order." Therefore, interpretation of the scope of bargaining language in the Vallejo charter necessarily bears upon the meaning of the same language in the Meyers-Milias-Brown Act.[5]

In the instant case, as we have stated, we are called upon to render a preliminary decision as to the scope of the arbitration. The arbitration process, however, is an ongoing one in which normally an arbitrator, rather than a court, will narrow and define the issues, rejecting those matters over which he cannot properly exercise jurisdiction because they fall exclusively within the rights of management. As Professor Grodin has observed: ". . . collective bargaining and issues arbitration are together a dynamic process, in which the positions of the parties and their interaction with the arbitrator is in a state of constant flux. Proposals get modified and non-negotiable positions become negotiable as the parties sort out their priorities, develop

---

statement or otherwise, for the return or reentry of said employee into the City service except as a new employee who is employed in accordance with the regular employment practices of the City in effect for the particular position of employment."

[4]The Meyers-Milias-Brown Act [hereinafter MMBA] applies to all local government employees in California. It provides for negotiation ("meet and confer") and mediation but not fact-finding or binding arbitration. (Gov. Code, §§ 3505 and 3505.2.)

[5]The meaning of the scope of bargaining language in the Vallejo charter does not differ from the meaning of such language in the MMBA because of the existence of dispute resolution provisions in the charter not present in the MMBA. The essential difference between the bargaining rights afforded Vallejo employees and those afforded local government employees in general under the MMBA relates only to the *remedies* available when negotiation breaks down and *not* to the scope of negotiation required.

The charter provides that "[i]t shall be the right of City employees . . . to *negotiate* on *matters* of wages, hours and working conditions, but not on matters involving the merits, necessity, or organization of any service or activity. . . ." (Italics added.) If no agreement is reached on *these matters,* they must be submitted to mediation, then fact-finding, then arbitration. The matters which are submitted to the three levels of dispute resolution are those upon which the parties *negotiate* but do not reach agreement. There is nothing in either section 809 or 810 which can be interpreted to exclude any matters which are subject to negotiation from subsequent submission to mediation, fact-finding and arbitration. Therefore interpretation of the scope of negotiation under the Vallejo charter is necessarily an interpretation of the scope of arbitration.

understanding of the implications of their positions, and perceive alternative solutions which they may not previously have considered. To determine what is arbitrable and what is not against this changing context is a bit like trying a balancing act in the middle of a rushing torrent." (Grodin, *California Public Employee Bargaining Revisited: The MMB Act in the Appellate Courts* (1974) Cal. Pub. Employee Rel. No. 21, p. 17.)

To a large extent the rendition of the definitions involved in this case will be welded by the facts developed in arbitration itself. We put the proposition in these words in *Butchers' Union Local 229 v. Cudahy Packing Co.* (1967) 66 Cal.2d 925, 938 [59 Cal.Rptr. 713, 428 P.2d 849]: "Because arbitration substitutes for economic warfare the peaceful adjudication of disputes, and because controversy takes on ephemeral shapes and unforeseeable forms, courts do not congeal arbitration provisions into fixed molds but give them dynamic sweep." We therefore must be careful not to restrict unduly the *scope* of the arbitration by an overbroad definition of "merits, necessity or organization." Nor does this cautious judicial approach expose the city to an excessive assertion of the arbitrators' jurisdiction; the city council *after* the rendition of the award may reject any award that invades its authority over matters involving "merits, necessity or organization" since the charter itself limits the scope of the arbitration decision to that which is "consistent with applicable law."[6]

With this caveat in mind, we approach the specific problem of reconciling the two vague, seemingly overlapping phrases of the statute: "wages, hours and working conditions," which, broadly read could encompass practically any conceivable bargaining proposal; and "merits, necessity or organization of any service" which, expansively interpreted, could swallow the whole provision for collective negotiation and relegate determination of all labor issues to the city's discretion.

In attempting to reconcile these provisions, we note that the phrase "wages, hours and other terms and conditions of employment" in the MMBA was taken directly from the National Labor Relations Act[7] (here-

---

[6]California authorities establish that after an arbitration decision has been rendered, judicial review is available to determine whether the arbitrators have exceeded their powers. (See, e.g., *Morris* v. *Zuckerman* (1968) 69 Cal.2d 686, 691 [72 Cal. Rptr. 880, 446 P.2d 1000]; *National Indemnity Co.* v. *Superior Court* (1972) 27 Cal.App.3d 345, 349 [103 Cal.Rptr. 606]; *Firestone Tire & Rubber Co.* v. *United Rubber Workers* (1959) 168 Cal.App.2d 444, 449 [335 P.2d 990]; *Flores* v. *Barman* (1955) 130 Cal.App.2d 282, 287 [279 P.2d 81]; *Drake* v. *Stein* (1953) 116 Cal. App.2d 779, 785 [254 P.2d 613].)

[7]The NLRA provides that "to bargain collectively is . . . to meet at reasonable times and confer in good faith with respect to wages, hours, and other terms and conditions of employment . . . ." (29 U.S.C. § 158(d)).

inafter NLRA). (See Grodin, *Public Employee Bargaining in California: The Meyers-Milias-Brown Act in the Courts* (1972) 23 Hastings L.J. 719, 749.) The Vallejo charter only slightly changed the phrasing to "wages, hours and working conditions." A whole body of federal law has developed over a period of several decades interpreting the meaning of the federal act's "wages, hours and other terms and conditions of employment."

In the past we have frequently referred to such federal precedent in interpreting parallel language in state labor legislation. Thus, for example, in *Englund* v. *Chavez* (1972) 8 Cal.3d 572, 576 [105 Cal.Rptr. 521, 504 P.2d 457], we determined the reach of the California Jurisdictional Strike Act in part by reference to judicial construction of similar language in the National Labor Relations Act. Similarly, in *Petri Cleaners, Inc.* v. *Automotive Employees, etc., Local No. 88* (1960) 53 Cal.2d 455, 459 [2 Cal.Rptr. 470, 349 P.2d 76], we referred to judicial interpretation of the "interfere with, restrain and coerce" language in section 8(a) (1) and (2) of the NLRA to aid us in interpreting the meaning of "interfered with, dominated or controlled" in Labor Code section 1117.

The origin and meaning of the second phrase—excepting "merits, necessity or organization" from the scope of bargaining—cannot claim so rich a background. ■ Apparently the Legislature included the limiting language not to restrict bargaining on matters directly affecting employees' legitimate interests in wages, hours and working conditions but rather to forestall any expansion of the language of "wages, hours and working conditions" to include more general managerial policy decisions.

Although the NLRA does not contain specific wording comparable to the "merits, necessity or organization" terminology in the city charter and the state act, the underlying fear that generated this language—that is, that wages, hours and working conditions could be expanded beyond reasonable boundaries to deprive an employer of his legitimate management prerogatives—lies imbedded in the federal precedents under the NLRA. As a review of federal case law in this field demonstrates, the trepidation that the union would extend its province into matters that should properly remain in the hands of employers has been incorporated into the interpretation of the scope of "wages, hours and terms and conditions of employment."[8]

---

[8]Thus federal cases have held an employer need not bargain about a decision to shut down one of its plants for economic reasons (*N.L.R.B.* v. *Royal Plating & Polishing Co.* (3d Cir. 1965) 350 F.2d 191), nor about a decision based on economic considerations alone to terminate its business and reinvest its capital in a different enterprise in another location as a minority partner (*N.L.R.B.* v. *Transmarine Navigation Corporation* (9th Cir. 1967) 380 F.2d 933). Furthermore, a decision to re-

Thus, because the federal decisions effectively reflect the same interests as those that prompted the inclusion of the "merits, necessity or organization" bargaining limitation in the charter provision and state act, the federal precedents provide reliable if analogous authority on the issue.

The City of Vallejo objects to the use of NLRA precedents because of the alleged differences between employment relations in the public and private sectors. Although we recognize that there are certain basic differences between employment in the public and private sectors,[9] the adoption of legislation providing for public employment negotiation on wages, hours and working conditions just as in the private sector demonstrates that the Legislature found public sector and private sector employment relations sufficiently similar to warrant similar bargaining provisions.[10] ▉ We therefore conclude that the bargaining requirements of the National Labor Relations Act and cases interpreting them may properly be referred to for such enlightenment as they may render in our interpretation of the scope of bargaining under the Vallejo charter.

We now turn to an analysis of the specific bargaining proposals which are at issue here.

## 1. *Schedule of Hours*

▉ The issue of Schedule of Hours by which the union proposed a maximum of 40 hours per week for fire fighters on 8-hour shifts and 56 hours per week for fire fighters on 24-hour shifts is clearly negotiable and arbitrable despite the city's argument that it involves the "organization" of the fire service. The Vallejo charter provides explicitly that city employees shall have the right to bargain on matters of wages, *hours* and working con-

---

locate the employer's plant to another location for economic reasons has been held "clearly within the realm of managerial discretion" and not subject to bargaining on the union's demand (*N.L.R.B.* v. *Rapid Bindery, Inc.* (2d Cir. 1961) 293 F.2d 170, 176).

[9] See generally Shaw & Clark, *Practical Differences Between Public & Private Sector Collective Bargaining* (1972) 19 U.C.L.A.L.Rev. 867; Wellington & Winter, *The Limits of Collective Bargaining in Public Employment* (1969) 78 Yale L.J. 1107; Report of the Western Assembly on Collective Bargaining in American Government (1972) pages 4-5; *Project: Collective Bargaining and Politics in Public Employment* (1972) 19 U.C.L.A.L.Rev. 887.

[10] The Assembly Advisory Council on Public Employee Relations reached the same conclusion after studying arguments of alleged differences between the public and private sectors. (Final Rep., p. 139, Mar. 15, 1973.) Furthermore, we applied private sector precedent in interpreting another aspect ot the MMBA in *Social Workers' Union, Local 535* v. *Alameda Welfare Dept.* (1974) 11 Cal.3d 382 [113 Cal.Rptr. 461, 521 P.2d 453].

ditions; furthermore, working hours and work days have been held to be bargainable subjects under the National Labor Relations Act. In *Meat Cutters v. Jewel Tea* (1965) 381 U.S. 676, 691 [14 L.Ed.2d 640, 650, 85 S.Ct. 1596] the United States Supreme Court held that the limitation of butchers' work hours to the period of 9 a.m. to 6 p.m. was a mandatory subject of bargaining. The city cites no authority to the contrary. Accordingly, we conclude that Schedule of Hours is a negotiable issue.

## 2. *Vacancies and Promotions*

■ The union's Vacancies and Promotions proposal concerns fire fighters' job security and opportunities for advancement and therefore relates to the terms and conditions of their employment. (Cf. *District 50, United Mine Workers, Local 13942* v. *N.L.R.B.* (4th Cir. 1966) 358 F.2d 234.) Similar proposals for union hiring hall arrangements have been held to involve terms and conditions of employment under the National Labor Relations Act and to constitute mandatory subjects of bargaining. (*N.L.R.B.* v. *Tom Joyce Floors, Inc.* (9th Cir. 1965) 353 F.2d 768, 771.)

The city contends that this proposal may not apply to appointment or promotion to the position of deputy fire chief. Although the Vallejo charter does not contain any provision for determining the proper bargaining unit, supervisory or managerial employees are routinely excluded from the bargaining units under the National Labor Relations Act. (*N.L.R.B.* v. *Gold Spot Dairy, Inc.* (10th Cir. 1970) 432 F.2d 125; see *N.L.R.B.* v. *Bell Aerospace Co.* (1974) 416 U.S. 267 [40 L.Ed.2d 134, 94 S.Ct. 1757]; by analogy, we conclude that under the charter the union can claim no right to bargain as to supervisory positions.

We are presented with no facts which disclose whether the deputy fire chief's duties are supervisory; his title alone does not constitute a sufficient basis for excluding him from the bargaining unit. We therefore conclude that this issue should be submitted to the arbitrators who will hear the facts which will enable them to determine whether the deputy fire chief's duties are indeed supervisory. If so, the union's Vacancies and Promotions proposal does not apply to him or his position because he is not a member of the bargaining unit.

## 3. *Constant Manning Procedure*

An examination of this issue illustrates the wisdom of judicial self-restraint in attempting pre-arbitral definitions of the scope of arbitration. Apparently the union originally sought to add one engine company and to increase the personnel assigned to the existing engine companies. If these

union demands required the building of a new fire house or the purchase of new equipment, they could very well intrude upon management's role of formulating policy. In view of the union's counterclaim that such a station and equipment were necessary for the safety of the men, this issue could have presented a complex problem. But the very flow of the proceedings washed away these questions because the union altered its position and accepted the recommendation of the fact finding committee "that the manning schedule presently in effect be continued without change during the term of the new Memorandum of Agreement." Hence we do not face the problem of whether the construction of a new fire house and the purchase of new equipment would intrude upon managerial prerogatives of policy making.

Although the city challenges even the limited status quo version of the manpower issue, contending that the fact finding ruling involves the "merits" and "organization" of the fire department and is therefore excluded from the scope of bargaining, we cannot conclude at this stage that the manpower proposal is necessarily nonarbitrable.

The city argues that manpower level in the fire department is inevitably a matter of fire prevention policy, and as such lies solely within the province of management. If the relevant evidence demonstrates that the union's manpower proposal is indeed directed to the question of maintaining a particular standard of fire prevention within the community, the city's objection would be well taken.

The union asserts, however, that its current manpower proposal is not directed at general fire prevention policy, but instead involves a matter of workload and safety for employees, and accordingly falls within the scope of negotiation and arbitration. Because the tasks involved in fighting a fire cannot be reduced, the union argues that the number of persons manning the fire truck or comprising the engine company fixes and determines the amount of *work* each fire fighter must perform. Moreover, because of the hazardous nature of the job, the union also claims that the number of persons available to fight the fire directly affects the *safety* of each fire fighter.

Insofar as the manning proposal at issue does in fact relate to the questions of employee workload and safety, decisions under the National Labor Relations Act fully support the union's contention that the proposal is arbitrable. First the federal authorities uniformly recognize "workload"[11]

---

[11]In the private sector employees rarely seek higher "manning" levels but instead usually frame similar demands in terms of reducing "workload." In one case, however, a union did phrase its proposal in "manning" terms, demanding an increase in the number of employees assigned to operate a specific 10-inch mill. The National

issues as mandatory subjects of bargaining whose determination may not be reserved to the sole discretion of the employer. (See, e.g., *Gallenkamp Stores Co.* v. *N.L.R.B.* (9th Cir. 1968) 402 F.2d 525, 529, fn. 4.) Thus, for example, in *Beacon Piece Dyeing & Finishing Co., Inc.* (1958) 121 N.L.R.B. 953, 954, 956, the National Labor Relations Board held that an employer could not unilaterally increase an employee's workload by assigning to him the operation of an extra machine. Similarly, the courts have recognized rules and practices affecting employees safety as mandatory subjects of bargaining since they indirectly concern the terms and conditions of his employment. (*N.L.R.B.* v. *Gulf Power Company* (5th Cir. 1967) 384 F.2d 822.)

Moreover, a recent California public employment case, *Los Angeles County Employees Assn. Local 660* v. *County of Los Angeles* (1973) 33 Cal.App.3d 1 [108 Cal.Rptr. 625], affords additional support for the union's position. In interpreting the scope of bargaining language in the Meyers-Milias-Brown Act—language which, as pointed out earlier, largely parallels the scope of negotiation provision under the Vallejo City Charter —the *Los Angeles County Employees* court held that the county was required to negotiate with the union with respect to the size of the caseloads carried by social service eligibility workers. Because the caseload, i.e., "workload," of the social workers effectively determined the number of these workers needed to service the recipients of aid, bargaining over the size of caseloads in *Los Angeles County Employees* was in reality comparable to bargaining over "manning" levels.[12] In the case before us, the union claims that the fire fighters, like the Los Angeles social workers, are essentially demanding a particular workload but have framed their demand in terms of "manning," that is the number of people available to fight each fire.

Given the parties' divergent characterizations of the instant manpower proposal, either one of which may well be accurate, we believe the proper course must be to submit the issue to the arbitrators so that a factual record may be established. The nature of the evidence presented to the arbitrators should largely disclose whether the manpower issue primarily involves the workload and safety of the men ("wages, hours and working conditions")

---

Labor Relations Board found the proposal to constitute a mandatory subject of bargaining. (*Timken Roller Bearing Co.* (1946) 70 N.L.R.B. 500, 504-505, revd. on other grounds (6th Cir. 1947) 161 F.2d 949.)

[12] The city argues that the *Los Angeles County Employees* case is distinguishable from the instant matter because it only concerned the "negotiability" of the caseload issue and not its "arbitrability." As noted above (see fn. 5, *supra*), however, under the charter provision at issue in this case, the *scope* of negotiation and the *scope* of arbitration are identical.

or the policy of fire prevention of the city ("merits, necessity or organization of any governmental service"). On the basis of such a record, the arbitrators can properly determine in the first instance whether or not, and to what extent, the present manpower proposal is arbitrable.

Furthermore, the parties themselves, or the arbitrators, in the ongoing process of arbitration, might suggest alternative solutions for the manpower problem that might remove or transform the issue. Indeed, the union in the instant case has already abandoned one position and assumed another. These are the elements and considerations that argue against preliminary court rulings that would dam up the stream of arbitration by premature limitations upon the process, thwarting its potential destination of the resolution of the issues. Hence we hold that the charter provision as to "merits, necessity or organization" of the service does not at this time preclude the arbitration of the union proposal that the manning schedule presently in effect be continued for the term of the new agreement.

### 4. *Personnel Reduction*

■ Finally, the union advanced a Personnel Reduction proposal which would require that the city bargain with the union with respect to any decision to reduce the number of fire fighters. Under the proposal, any reduction would be on a least-seniority basis, and no new employees could be hired until all those laid off were given an opportunity to return. The city objects to that part of the proposal requiring bargaining on a decision to reduce personnel and contends that any such matter is not negotiable because it involves the merits, necessity or organization of the fire fighting service.

A reduction of the entire fire fighting force based on the city's decision that as a matter of policy of fire prevention the force was too large would not be arbitrable in that it is an issue involving the organization of the service.

Thus cases under the NLRA indicate that an employer has the right unilaterally to decide that a layoff is necessary, although it must bargain about such matters as the *timing* of layoffs and the *number* and *identity* of the employees affected. (*N.L.R.B.* v. *United Nuclear Corporation* (10th Cir. 1967) 381 F.2d 972.) In some situations, such as that in which a layoff results from a decision to subcontract out bargaining unit work, the decision to subcontract and lay off employees is subject to bargaining. (*Fibreboard Corp.* v. *Labor Board* (1964) 379 U.S. 203 [13 L.Ed.2d 233, 85 S.Ct. 398, 6 A.L.R.3d 1130].) The fact, however, that the decision to lay off results

in termination of one or more individuals' employment is not *alone* sufficient to render the decision itself a subject of bargaining. (*N.L.R.B.* v. *Dixie Ohio Express Co.* (6th Cir. 1969) 409 F.2d 10.)

On the other hand, because of the nature of fire fighting, a reduction of personnel may affect the fire fighters' working conditions by increasing their workload and endangering their safety in the same way that general manning provisions affect workload and safety. To the extent, therefore, that the decision to lay off some employees affects the workload and safety of the remaining workers, it is subject to bargaining and arbitration for the same reasons indicated in the prior discussion of the manning proposal.

Our conclusion that the issues of Personnel Reduction, Vacancies and Promotions, Schedule of Hours and Constant Manning Procedure, except as limited above, involve the wages, hours or working conditions of fire fighters and are negotiable requires in the context of this suit that the City of Vallejo submit these issues to arbitration. We in no way evaluate the merit of the union proposals, but hold only that under the Vallejo charter they are arbitrable.

Such a result comports with the strong public policy in California favoring peaceful resolution of employment disputes by means of arbitration. We have declared that state policy in California "favors arbitration provisions in collective bargaining agreements and recognizes the important part they play in helping to promote industrial stabilization." (*Posner* v. *Grunwald-Marx, Inc.* (1961) 56 Cal.2d 169, 180 [14 Cal.Rptr. 297, 363 P.2d 313].) In this case the voters of the City of Vallejo similarly declared that they consider arbitration to be the most appropriate means of resolving labor disputes. Through section 810 the citizens of Vallejo delegated to a board of arbitrators the power to render a final and binding decision in labor disputes "to the extent permitted by law" after considering "all factors relevant to the issues from the standpoint of both the employer and the employee, including the City's financial condition."[13]

At the same time Vallejo voters provided that any employee who participated in a strike against the city should be automatically terminated. (§ 810.) Thus, the employee's *quid pro quo* for this no-strike provision con-

---

[13]An amicus has contended that the disputed issues are not arbitrable because submission of them to arbitration constitutes an unconstitutional delegation of legislative power. Arbitration of public employment disputes has been held constitutional by state supreme courts in *State* v. *City of Laramie* (Wyo. 1968) 437 P.2d 295 and *City of Warwick* v. *Warwick Regular Firemen's Ass'n* (1969) 106 R.I. 109 [256 A.2d 206].

To the extent that the arbitrators do not proceed beyond the provisions of the Vallejo charter there is no unlawful delegation of legislative power.

sisted of the arbitrability of all disputes (see *Boys Markets* v. *Clerks Union* (1970) 398 U.S. 235 [26 L.Ed.2d 199, 90 S.Ct. 1583]); the arbitration and no-strike provisions were interdependent. Any interpretation of the Vallejo charter which improperly failed to require arbitration on the full range of negotiable issues would not only erroneously curtail arbitration but would invite the very labor strife which the charter provisions seek to prevent.

For the foregoing reasons we dispose of the issues as follows: (1) The Schedule of Hours proposal must be submitted to arbitration in full. (2) The proposal as to Vacancies and Promotions is arbitrable. The arbitrators shall additionally hear the facts to determine whether the position of deputy fire chief is a supervisory one and thus excluded from the bargaining unit. If so, the Vacancies and Promotions proposal cannot apply to the deputy fire chief position. (3) The proposal that the manning schedule presently in effect be continued without change during the term of the new agreement is arbitrable to the extent that it affects the working conditions and safety of the employees. (4) As to Personnel Reduction, the proposal to reduce personnel is arbitrable only insofar as it affects the working conditions and safety of the remaining employees. Matters of seniority and reinstatement included in the Personnel Reduction proposal are arbitrable.

We affirm the judgment as herein modified and remand the case to the superior court with directions to issue a writ of mandamus requiring the City of Vallejo to proceed to arbitrate the issues of "Reduction of Personnel," "Vacancies and Promotions," "Schedule of Hours," and "Constant Manning Procedure" in accordance with this opinion. Each party shall bear its own costs on appeal.

Wright, C. J., McComb, J., Mosk, J., Burke, J., Sullivan, J., and Clark, J., concurred.