[Civ. No. 49633. First Dist., Div. One. July 26, 1982.]

TERRY W. ANDREWS, Plaintiff and Appellant, v.
BOARD OF SUPERVISORS OF CONTRA COSTA COUNTY
et al., Defendants and Respondents.

COUNSEL

Terry W. Andrews, in pro. per., for Plaintiff and Appellant.

John B. Clausen, County Counsel, and E. V. Lane, Deputy County Counsel, for Defendants and Respondents.

OPINION

NEWSOM, J.—Appellant has been employed as a deputy probation officer III (formerly senior deputy) by the County of Contra Costa since January 1974. His position is part of the probation unit represented by Contra Costa Employees Association, Local 1 (hereinafter Local 1), which has been certified by respondent as the duly elected majority representative of the probation unit since October 20, 1970. Appellant, however, is not a member of Local 1.

Prior to March 1, 1978, appellant received 5 percent of his base salary as shift differential pay for working a schedule described in Contra Costa County Ordinance No. 36-8.602(3) as follows: "Every employee whose position has a regularly assigned daily work schedule: [¶] ... (3) Involving rotation between the shifts commonly called day, afternoon and graveyard shifts; shall receive extra pay of only one shift differential of five percent of his base salary rate, unless otherwise provided by Board resolution. . . ."

In July 1977, Local 1 entered into a memorandum of understanding with the County of Contra Costa which was approved by respondent during that month and incorporated into resolution No. 77/599.

That resolution provided for a number of terms and conditions of employment for the job units represented by Local 1, including what was then senior probation officer (now deputy probation officer III). In particular, resolution 77/579 stated that employees of the probation unit would receive shift differential pay *only* for those shifts in which they worked four or more hours between the hours of 5 p.m. through 9 a.m.: "F. Effective September 15, 1977 or as soon thereafter as possible, all employees in a classification in the Probation Unit shall receive a shift differential in the amount specified in Section 36-8.604 of the Contra Costa County Ordinance Code, said differential to be paid only for a

shift in which the employee works four (4) or more hours between the times of five p.m. through nine a.m. (5:00 p.m. through 9:00 a.m.)" This provision conflicted with the prior conditions for shift differential pay set forth in County Ordinance No. 36-8.602(3).*

Consequently, the board of supervisors, in ordinance No. 78-3, amended ordinance No. 36-8.602(3) to conform with the provisions of the memorandum of understanding. Ordinance No. 78-3 was passed on January 3, 1978, and became effective February 2, 1978. Under the terms of the memorandum of understanding and resolution 77/599, the operative date for the new method of paying shift differentials was March 1, 1978. Thereafter, appellant was paid a shift differential in accordance with the memorandum of understanding incorporated in resolution No. 77/599.

On March 24, 1978, appellant initiated a formal grievance procedure pursuant to Contra Costa County Ordinance chapter 34-28, complaining that he had not relinquished or bargained away his right to receive shift differential pay as mandated by county ordinance; that he was not represented by Local 1 and had no knowledge that they purported to represent him; that he had not been given an opportunity to represent himself with his employer as guaranteed by state law; that the county ordinances did not provide him with the statutory opportunity for such self-representation; and that the taking of his shift pay was without due process of law.

Following the denial of petitioner's final grievance appeal he filed the present petition for writ of mandate. In denying it, the trial court found that: "Petitioner is complaining that he was denied the right to bargain for himself as an individual guaranteed in the Meyers-Milias-Brown Act. Petitioner filed a grievance after the ordinance on shift differential pay had become effective, and he had received his first paycheck thereunder; however, petitioner did not seek to meet and confer with the Employer [Employee] Relations Officer in 1977 when the Memorandum of Undertaking [Understanding] was negotiated. Nowhere in the petition for writ of mandate does petitioner give any excuse for failure to make any request for bargaining on his own behalf."

---

*By comparison, appellant had been receiving the shift differential pay whenever his daily work assignment involved rotating between day, evening and graveyard shifts; he had not been required to work a minimum of four hours between 5 p.m. and 9 a.m. in order to receive the differential compensation.

■ The first issue thus presented on appeal is whether, under these circumstances, appellant as a nonmember of a union representing public employees, is bound by the memorandum of understanding entered into between the union and the public employer.

The Meyers-Milias-Brown Act (MMB Act), Government Code sections 3500-3511, is a comprehensive statutory scheme governing employee-employer relations on the local government level. In its preamble (§ 3500), the purposes of the MMB Act are stated to be: "[T]o promote full communication between public employers and their employees by providing a reasonable method of resolving disputes regarding wages, hours, and other terms and conditions of employment between public employers and public employee organizations ... [and] to promote the improvement of personnel management and employer-employee relations within the various public agencies in the State of California by providing a uniform basis for recognizing the right of public employees to join organizations of their own choice and be represented by such organizations in their employment relationships with public agencies."

The MMB Act provides for the recognition of employee organizations (§ 3501, subd. (b)); certain employee rights, including the right to be members or refrain from becoming members of employee organizations (§ 3502); the right of a recognized employee organization to represent its members (§ 3503); the scope of representation (§ 3504); notice requirements applicable to employee organizations (§ 3504.5); a prohibition on discrimination on the basis of union (or nonunion) membership (§ 3506); and the authorization to local agencies to adopt reasonable rules and regulations governing employee relations (§ 3507).

By the instant appeal, appellant seeks to exercise his right to represent himself in employment matters with respondent. Section 3502 of the MMB Act specifically guarantees this right, as follows: "Except as otherwise provided by the Legislature, public employees shall have the right to form, join, and participate in the activities of employee organizations of their own choosing for the purpose of representation on all matters of employer-employee relations. Public employees also shall have the right to refuse to join or participate in the activities of employee organizations and shall have the right to represent themselves individually in their employment relations with the public agency."

Contra Costa Ordinance No. 34-6.002 echoes this right of self-representation: "Employees have the right to form, join and participate in the activities of employee organizations of their own choosing for the purpose of representation on all matters of employer-employee relations. Employees also have the right to refuse to join or participate in the activities of employee organizations, and the right to represent themselves individually in their employment relations with the county. (Ord. 70-17 § 1 (part), 1970)."

Appellant contends that he is not a member of Local 1, and so is not bound by any agreements, including the memorandum of understanding, made between Local 1 and respondent. He further claims that his right to bargain for himself as an individual has been denied by respondent, and that the exercise of the right to self-representation should not be limited in time to the period during which respondent and Local 1 conducted negotiations regarding employment conditions.

Appellant asserts as authority for this position section 3503, which declares the right of recognized employee organizations to represent "their members" in employment relations with public agencies. Similarly, section 3505 speaks in terms of "members" of employee organizations in describing the duty to meet and confer in good faith: "The governing body of a public agency, or such boards, commissions, administrative officers or other representatives as may be properly designated by law or by such governing body, shall meet and confer in good faith regarding wages, hours, and other terms and conditions of employment with representatives of such recognized employee organizations, as defined in subdivision (b) of Section 3501, and shall consider fully such presentations as are made by the employee organization on behalf of *its members* prior to arriving at a determination of policy or course of action." (Italics added).

Conceding that the use of the word "members" is unfortunate, respondent points out that restricting representation solely to members of employee organizations would be inconsistent with the purpose of the MMB Act, which is in part to permit public employees as a unit and acting in concert to reach binding agreements with their employers. The argument continues that the Legislature clearly intended that the agreements so concluded would cover categories of employees, such as the probation unit, when approved by the board of supervisors, and would bind *all* employees in such unit, even those who have not joined the union. The word "members" thus refers, not to formal members of the

employee organization, but to *members of the unit* represented by the employee organization.

Justice Grodin in his learned commentary *Public Employee Bargaining in California: the Meyers-Milias-Brown Act in Courts* (1972) 23 Hastings L.J. 719, 733 footnote 67, recognizes two plausible interpretations of the disputed terms: "The difficulties posed by the language of section 3503 [and section 3505] could be resolved either by interpreting the word 'members' to include members of the bargaining unit, or by reading that section not as a limitation on the scope of representation, but as a minimum standard which may be exceeded by local government through local rules."

Appellant has quoted the folowing language from *Placentia Fire Fighters* v. *City of Placentia* (1976) 57 Cal.App.3d 9, 21 [129 Cal.Rptr. 126], supporting the view that the "members" refers, not to union members, but only to members of the employee unit, "There is to be only one employee representative of a unit; but a *member of that unit* is not required to join the representative group and may bargain directly with the public agency." (Italics added.)

We are not required to choose between competing interpretations, however, since Contra Costa Ordinance Nos. 74-14.006 and 34-14.008 have eliminated the ambiguity by providing as follows: "Majority representative(s) shall be entitled to meet and confer in good faith for *employees in their representation units.* (Emphasis added.) If agreement is reached, a memorandum of understanding shall be prepared and signed by the Employee Relations Officer and by an authorized representative(s) of the majority representative(s) and then submitted jointly to the Board for final action. [¶] This process shall not preclude other recognized employee organizations or individuals from consulting with a management representative on the same matters, but any action taken by a management representative *shall not be inconsistent with terms of any memorandum of understanding covering such employees.*" (Italics added.)

Representation by the majority representative is to be on behalf of unit *employees*, not members. Clearly, therefore, appellant is represented in the meet-and-confer process by Local 1, the elected majority representative of the employees of the probation unit.

Appellant next argues that, even if Local 1 represented him, he had a right to choose to bargain for himself, and was not bound to exercise such right within the time set forth in the memorandum.

The time table for negotiations relating to employment conditions is set forth in Contra Costa Ordinance No. 34-14.002 as follows: "Requests from recognized employee organizations for changes in salaries, wages, fringe benefits and other like terms, and conditions of employment for employees generally shall be submitted to the employee relations officer, during a specified period determined annually by the board after consultation between the employee relations officer and recognized employee organizations, so that proposals can be properly considered before the proposed county budget is submitted to the board. (Ord. 70-17 § 1 (part), 1970)."

Thus, all employee consultation in Contra Costa County must occur before the submission of the county budget to respondent. To permit appellant and each similarly situated individual employee to confer regarding employment conditions at his or her convenience would not only be chaotic, but would also discriminate against members of recognized employee organizations, all in contravention of the stated purposes of the act.

We are of the opinion that appellant must reasonably exercise his right to consultation with his public employer during the same time period in which the employer is meeting with the recognized employee organization of appellant's unit. Here, he failed to exercise his right of self-representation during such period and is consequently bound by the terms of the memorandum of understanding as incorporated in resolution 77/599.

■ We next consider appellant's argument that his right under Ordinance No. 36-8.602 to receive 5 percent of his base salary as shift differential pay was a *vested* right of which he has been deprived without due process of law.

We reject appellant's argument. The right to receive differential pay is not a right to future benefits based on past or current employment, as, for example, are retirement rights, but merely a form of compensation which accrues concurrently with appellant's salary.

Moreover, as respondent argues, the setting of compensation is, generally, a legislative function (*Alameda County Employees' Assn.* v. *County of Alameda* (1973) 30 Cal.App.3d 518, 531; [106 Cal.Rptr. 441]; *City and County of S.F.* v. *Boyd* (1943) 22 Cal.2d 685, 689 [140 P.2d 666]), while Contra Costa has specifically provided by ordinance (No. 36-8.602) that the amount of shift differential pay is subject to amendment by "Board Resolution."

We thus conclude that appellant's right to receive shift differential is not a vested right, but that the right to receive such pay arises only when appellant works a particular shift. We further conclude that in any event appellant has neither alleged nor shown respondent's failure to comply with the sections of the Government Code containing the procedural requirements for adoption of the ordinances in question.

■ Appellant next contends that the subject ordinances are unfair and hence unconstitutional because they provide for exclusive representation by Local 1 without imposing on the union a corresponding duty to represent every employee fairly.

While the MMB Act does not expressly mention the duty of fair representation, federal courts, applying the National Labor Relations Act (NLRA) have found such a duty implied in the private sector where an employee organization has the right to be the exclusive representative, and have held that the grant of that exclusive authority requires a reciprocal obligation to exercise the authority fairly. (*Local Union No. 12., United Rubber, C., L. & P. Wkrs.* v. *N. L. R. B.* (5th Cir. 1966) 368 F.2d 12, 17, cert. den. 389 U.S. 837 [19 L.Ed.2d 99, 88 S.Ct. 53]; *Steele* v. *L. & N. R. Co.* (1944) 323 U.S. 192 [89 L.Ed. 173, 65 S.Ct. 226].)

Where the language of the NLRA parallels that of the MMB Act, the NLRA precedents will be used to interpret the MMB Act. (*Fire Fighters Union* v. *City of Vallejo* (1974) 12 Cal.3d 608, 616 [116 Cal.Rptr. 507, 526 P.2d 971].) Thus, while under these principles we might otherwise find an implied duty of fair representation in the MMB Act, here the MMB Act differs significantly from the NLRA in that the former allows employees "to represent themselves individually in their employment relations with the public agency." (§ 3502.) Absent exclusive representation, the rationale for the reciprocal duty of fair representation does not exist.

And, even if there was a duty of fair representation, we think Local 1 did fairly represent appellant. A violation of the duty exists "when a union's conduct toward a member of the collective bargaining unit is arbitrary, discriminatory, or in bad faith." (*Vaca* v. *Sipes* (1967) 386 U.S. 171 [17 L.Ed.2d 842, 87 S.Ct. 903].) Local 1 did not act in bad faith or in a discriminatory manner towards appellant. It negotiated and obtained benefits for appellant no different from those it obtained for appellant's coemployee members of the probation unit.

The judgment is affirmed.

Racanelli, P. J., and Bancroft, J.,* concurred.

*Assigned by the Chairperson of the Judicial Council.