TO BE PUBLISHED IN THE OFFICIAL REPORTS

OFFICE OF THE ATTORNEY GENERAL
State of California

DANIEL E. LUNGREN
Attorney General

<table>
<tr><td>OPINION<br><br>of<br><br>DANIEL E. LUNGREN<br>Attorney General<br><br>ANTHONY S. DA VIGO<br>Deputy Attorney General</td><td>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:</td><td>No. 91-102<br><br>MAY 8, 1991</td></tr>
</table>

The DEPUTY SHERIFF'S ASSOCIATION OF SAN DIEGO COUNTY, a recognized employee organization as defined in the Meyers-Milias-Brown Act, has requested this office to grant leave to sue the COUNTY OF SAN DIEGO in quo warranto pursuant to section 803 of the California Code of Civil Procedure. Relator contends that section 606 of the San Diego County Charter is invalid and void, and that defendant, acting under color thereof, has usurped, intruded into, and unlawfully held and exercised powers not belonging to it.

CONCLUSION

It is concluded that leave to sue should be DENIED.

CRITERIA FOR QUO WARRANTO

Quo warranto is an appropriate remedy by which to challenge the validity of a city or county charter. (*The People* ex rel. *Seal Beach Police Officers Assn. v. City of Seal Beach* (1984) 36 Cal.3d 591, 595; *County of Santa Clara v. Hayes Co.* (1954) 43 Cal.2d 615, 618; *International Assn. of Fire Fighters v. City of Oakland* (1985) 174 Cal.App.3d 687, 694; *Oakland Mun. Imp. League v. City of Oakland* (1972) 23 Cal.App.3d 165, 169.)

In deciding whether to grant leave to sue in the name of the People of this state, we consider the following fundamental precepts which provide the basis for this analysis: leave will be granted where there is a substantial question of law or fact which requires judicial resolution, *and* where the action in quo warranto would serve the overall public interest of the People of this state. (72 Ops.Cal.Atty.Gen. 15, 19 (1989).)

MATERIAL FACTS

On August 1, 1990, defendant Board of Supervisors approved for submission to the voters a proposed charter amendment ("proposition A") providing for the creation, by ordinance, of a Citizens Law Enforcement Review Board ("CLERB"). Essentially, CLERB would be authorized

to investigate, report, and recommend action to be taken in connection with complaints of official misconduct in the Sheriff's Department.

On December 6, 1990, proposition A was adopted by the voters, and on December 15, 1990, was filed with the Secretary of State.

Relator Deputy Sheriff's Association alleges and defendant denies that relator was not granted an opportunity to meet and confer with defendant respecting the creation of CLERB prior to the submission of proposition A to the electorate for approval.

ISSUES OF FACT OR LAW

Relator contends that the decision to submit proposition A to the voters was subject to the right to meet and confer pursuant to the Meyers-Milias-Brown Act ("Act") (Government Code sections 3500-3510).[1]

The Act provides that both the public employer and the recognized employee organization have a mutual obligation to meet and confer on request by either party and to endeavor to reach agreement on matters within the scope of representation. Specifically, section 3505 provides:

"<u>The governing body of a public agency,</u> or such boards, commissions, administrative officers or other representatives as may be properly designated by law or by such governing body, <u>shall meet and confer</u> in good faith <u>regarding wages, hours, and other terms and conditions of employment</u> with representatives of such recognized employee organizations, as defined in subdivision (b) of Section 3501, and shall consider fully such presentations as are made by the employee organization on behalf of its members prior to arriving at a determination of policy or course of action.

"`Meet and confer in good faith' means that a public agency, or such representatives as it may designate, and representatives of recognized employee organizations, shall have the mutual obligation personally to meet and confer promptly upon request by either party and continue for a reasonable period of time in order to exchange freely information, opinions, and proposals, and to endeavor to reach agreement on matters with the scope of representation prior to the adoption by the public agency of its final budget for the ensuing year. . ." (Emphasis added.)

Section 3504 defines the scope of representation:

"The scope of representation shall include all matters relating to employment conditions and employer-employee relations, including, but not limited to, wages, hours, and other terms and conditions of employment, except, however, that <u>the scope of representation</u> shall not include consideration of the merits, necessity, or organization of any service or activity provided by law</u> or executive order." (Emphasis added.)

The duty to meet and confer in good faith is confined to matters within the scope of representation. (*Internat. Assn. of Fire Fighters Union v. City of Pleasanton* (1976) 56 Cal.App.3d

_____

[1]All section references are to the Government Code unless otherwise specified.

959, 966; § 3405, *supra*.) In the latter section, the exclusion from the scope of representation of considerations respecting the "merits, necessity, or organization of any service or activity provided by law" is similar to the "fundamental management decisions" exclusion recognized in federal cases construing federal labor statutes. (*Fire Fighters Union v. City of Vallejo* (1974) 12 Cal.3d 608, 616; *Bldg. Material & Const. Teamsters' Union v. Farrell* (1986) 41 Cal.3d 651, 658.)

Unlike its federal counterpart, the exclusion under the state Act was expressly incorporated by amendatory legislation. (Stats. 1968, ch. 1390, § 4.) Its purpose was not to restrict bargaining on matters directly affecting employees' legitimate interests in "wages, hours and working conditions", but rather to forestall any expansion of that phrase to include more general managerial policy decisions. (*People* ex rel. *Seal Beach Police Officers Assn. v. City of Seal Beach, supra*, 36 Cal.3d at 602; *Fire Fighters Union v. City of Vallejo, supra,* 12 Cal.3d at 616.)

Even assuming, therefore, that the decision to create CLERB "primarily involves" (*Fire Fighters Union v. City of Vallejo, supra,* 616-617) or has a "significant or material relationship" (*Westinghouse Electric Corp. v. NLRB* (4th Cir. 1967) 387 F.2d 542, 548; *San Jose Police Officer's Assn. v. City of San Jose* (1978) 78 Cal.App.3d 935, 945) to wages, hours, or conditions of employment, the issue remains whether the decision involves the "merits, necessity, or organization of any service or activity provided by law" within the meaning of section 3504 as to be excluded from the scope of representation.

It is noted initially that the board of supervisors of a county is responsible for the supervision of official conduct of county officers, including the sheriff. (§ 25303.) CLERB may be viewed as a mode or organization by which this duty or activity provided by law may be executed or assisted. It is apparent, in any event, that the establishment of the organization concerns a matter of police community relations.

In *Berkeley Police Assn. v. City of Berkeley* (1977) 76 Cal.App.3d 931, the court held that certain policies adopted by the city fell within the management exception. These policies permitted a member of the citizen's review commission to attend police department board of review hearings concerning citizen complaints against police, and required attendance by a member of the police department at commission trial board meetings to respond to inquiries by the commission concerning the department's position on individual complaints. The court considered these policies as "concerning a matter of police community relations" which "clearly constitute management level decisions which are not properly within the scope of union representation and collective bargaining." (*Id.*, 937.) In *Bldg. Material & Const. Teamsters' Union v. Farrell, supra,* 664, the court observed that decisions involving the betterment of police community relations so affect the quality and nature of public services that the "burden of requiring an employer to confer about such fundamental decisions clearly outweighs the benefits to employer-employee relations that bargaining would provide."

It is our view that the determination to submit to the voters whether to adopt a citizen's review commission is a more fundamental management prerogative than is the selection of procedures for hearings before such a board. Since the adoption of the latter has been held to be exempted from the Act, *a fortiori* the former would be held to be exempt from the obligation to meet and confer under the Act.

Having determined that there is no substantial question of law or fact which requires judicial resolution, we need not inquire whether granting leave to sue would serve the public interest.[2]  Leave to sue is denied.

\* \* \* \* \*

---

[2]We note that litigation is proceeding between relator and defendant regarding whether the impact and effect of the ordinance is subject to the right to meet and confer pursuant to the Act.  That is, of course, a distinct and different issue from the one before us.  (*Fire Fighters Union* v. *City of Vallejo, supra,* 12 Cal.3d at pp. 621-622; *NLRB* v. *Transmarine Navigation Corp.* (9th Cir. 1967) 380 F.2d 933, 939.)