**Margie ELSAAS and Lillian Stuck, Plaintiffs,**

v.

**COUNTY OF PLACER; Valerie Flood; Operating Engineers—Stationary Local Union No. 39, Defendants.**

**No. CIV. S–98–1086 LKK/DAD.**

United States District Court,
E.D. California.

Feb. 9, 1999.

Wendy C. York, Sacramento, CA, for Plaintiff.

Matthew J. Gauger, Van Bourg, Weinberg, Roger & Rosenfeld, Sacramento, CA, for Defendant Local Union No. 39.

Franklin G. Gumpert, Barkett, Bumpert & Reiner, Sacramento, CA, for Defendants County of Placer and Valerie Flood.

*O R D E R*

KARLTON, Chief Judge Emeritus.

## I.

## PROCEDURAL HISTORY

Plaintiffs, Margie Elsaas and Lillian Stuck, sue their employer, Placer County District Attorney's Office, ("the County") and their local union ("the Union"). Plaintiffs claim that the County wrongfully demoted them in October of 1997 because they were identified as witnesses who would substantiate claims in a sexual harassment case against the County.[1] In essence, plaintiffs contend that the County created a hostile work environment—harassing and intimidating plaintiffs and retaliating against them.[2] Thus, plaintiffs allege a violation of 42 U.S.C. § 2000e–3(a)[3] and predicate jurisdiction on 42 U.S.C. § 2000e–5(f).[4]

Plaintiffs further claim that at all relevant times, they were members of the Union which had a contract to represent Placer County employees, including plaintiffs, in any labor and/or employment dispute with the County. Around October of 1997, plaintiffs contacted their union representative and requested representation because the County had passed them over for promotion, in favor of a co-worker. Plaintiffs asserted to the Union that the failure to promote was an act of retaliation punishing their participation in the sexual harassment suit. The Union, however, failed to advise plaintiffs of their rights. Then, on or about November 5, 1997, plaintiffs filed a formal grievance with the County; the Union declined to represent plaintiffs in pursuit of their grievance. Due to further alleged retaliation by the County, plaintiffs filed a second grievance on or about November 13, 1997. Again, the Union declined to represent plaintiffs.[5]

In their complaint, plaintiffs bring three causes of action against the Union: a claim for intentional infliction of emotional distress, another for negligent infliction of emotional distress, and a claim for breach of the duty of fair representation under state law. *See* Cal. Gov't Code §§ 3500 *et seq.*, the Myers Milias Brown Act (hereinafter "MMBA").

The Union has moved to dismiss the emotional distress claims on the grounds that plaintiffs have failed to state a claim for either intentional or negligent infliction of emotional distress and that the MMBA preempts both claims. The Union also moves to dismiss the duty of fair representation claim on the grounds that plaintiffs have failed to state a claim and that the claim is timebarred.

As I now explain, I cannot reach the Union's substantive basis for dismissal because of a more fundamental problem. Although it appears that in the instant case plaintiffs' claims against each defendant depend upon the wrongdoing of the other, under binding precedent this court lacks subject matter

1. *Grace, et al. v. County of Placer,* Placer County Superior Court, Case No. SCV 5610. Plaintiffs also sue Valerie Flood, the attorney of record representing Placer County in the *Grace* lawsuit.

2. They allege that "[t]he harassment and retaliation include, but is not limited to, issuing poor performance evaluations, demoting plaintiffs, excluding plaintiffs from management meetings, stripping plaintiffs of all of their supervisory responsibilities, excluding plaintiffs from conferences and seminars, intentionally keeping plaintiffs uninformed about critical information relevant to their job duties and responsibilities, disciplining other coworkers who spoke to and/or associated with plaintiffs, denying plaintiffs' advancement/promotion opportunities and ostracizing plaintiffs." (Complaint at ¶ 19).

3. This section provides in pertinent part that:
   "[i]t shall be an unlawful employment practice for an employer to discriminate against any of his employees ... because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has ... testified, assisted or participated in any manner in an investigation, proceeding or hearing under this subchapter."

4. This section provides in pertinent part that:
   "[e]ach United States district court ... shall have jurisdiction of actions brought under this subdivision."

5. The Union does not deny plaintiffs' allegations regarding their requests for representation and its failure to respond. Rather, it asserts that plaintiffs do not allege that the County violated a provision of the collective bargaining agreement or that the failure to represent was the result of invidious, arbitrary or capricious behavior on the Union's part.

jurisdiction over the claims against the Union, and I must dismiss on that basis.

## II.

### PENDENT PARTY JURISDICTION

The Union has not raised the issue of subject matter jurisdiction, and indeed both plaintiffs and the Union argue that this court has jurisdiction. Neither the failure to raise the issue nor the parties' contentions, however, are dispositive. Federal courts are courts of limited jurisdiction and may only exercise jurisdiction as permitted by law. Even when neither party has objected to jurisdiction, this court has an affirmative obligation to consider the issue *sua sponte*. *Demery v. Kupperman*, 735 F.2d 1139, 1149 n. 8 (9th Cir.), *cert. denied*, 469 U.S. 1127, 105 S.Ct. 810, 83 L.Ed.2d 803 (1985). This is true even if the parties are prepared to stipulate to jurisdiction. *Washington Local v. International Brotherhood of Boilermakers*, 621 F.2d 1032, 1033 (9th Cir.1980).

Plaintiffs and the Union argue that 28 U.S.C. § 1367, the supplemental jurisdiction statute, authorizes federal courts to exercise pendent party jurisdiction. Under § 1367, federal courts may exercise "supplemental jurisdiction" over "claims that involve the joinder or intervention of additional parties," and thus, under a plain reading of the statute, Congress has provided authorization for pendent party jurisdiction. That authoriza-

tion, however, does not end the court's inquiry.

Because plaintiffs' claims against the Union all arise under state law[6] and because there is no diversity of citizenship, the court has no independent basis to exercise jurisdiction over that defendant. Consequently, the Union is a pendent party. Federal courts may not exercise pendent party jurisdiction unless both Article III and Congress authorize them to do so. As the Ninth Circuit explained, "[b]efore it can be concluded that (pendent party) jurisdiction exists, a federal court must satisfy itself ... that Article III permits it, [and] that Congress in the statutes conferring jurisdiction has not expressly or by implication negated its existence." *Ayala v. United States*, 550 F.2d 1196, 1199 (9th Cir.1977); *see also Finley v. United States*, 490 U.S. 545, 549, 109 S.Ct. 2003, 104 L.Ed.2d 593 (1989).[7] Thus, congressional approval of pendent party jurisdiction, as manifested in 28 U.S.C. § 1367, is effective only if pendent party jurisdiction is permitted under Article III.

That is not to say that Article III must expressly confer jurisdiction. Under the doctrine of ancillary jurisdiction, a district court "acquires jurisdiction of a case or controversy in its entirety, and as an incident to the disposition of the matter properly before it, it may decide other matters raised by the case of which it could not take cognizance were they independently presented."

6. The court has considered and rejected the possibility that plaintiffs' claim alleging violations of the Myers–Milias Brown Act might arise under federal law. "Where the language of the [National Labor Relations Act] parallels that of the MMB Act, the NLRA precedents will be used to interpret the MMB Act." *Andrews v. Board of Supervisors of Contra Costa County*, 134 Cal. App.3d 274, 283, 184 Cal.Rptr. 542 (1982)(citing *Fire Fighters Union v. City of Vallejo*, 12 Cal.3d 608, 616, 116 Cal.Rptr. 507, 526 P.2d 971 (1974)). Given the rule that courts should rely upon NLRA precedents to interpret the MMBA, one might argue that, under *Franchise Tax Board v. Construction Laborers Vacation Trust*, 463 U.S. 1, 103 S.Ct. 2841, 77 L.Ed.2d 420 (1983), the court has federal question jurisdiction over plaintiffs' MMBA claim.

In *Franchise Tax Board*, the United States Supreme Court declared that "[e]ven though state law creates [a party's] cause of action, its case

might still 'arise under' the laws of the United States if a well-pleaded complaint established that its right to relief under state law requires resolution of a substantial question of federal law in dispute between the parties." While interpreting the MMBA may require consultation of NLRA precedents, courts need not actually construe the terms of the NLRA itself. Rather, courts directly interpret the terms of the MMBA, and those terms make no reference to the NLRA. Thus, courts need not resolve questions of federal law to interpret the MMBA; NLRA precedents are relevant only to the extent that they help courts construe the intent and scope of the MMBA.

7. Article III provides in pertinent part:

"The judicial power shall extend to all cases, in law and equity, arising under this Constitution, the laws of the United States and ... between citizens of different States...."

Charles A. Wright, Arthur R. Miller and Edward H. Cooper, 13 *Federal Practice and Procedure*, 82 (1984). Closely related to the doctrine of ancillary jurisdiction is the doctrine of pendent claims as articulated by the Supreme Court in *United Mine Workers v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). There, the Court held that where a federal claim is properly alleged, a district court has power to hear other "pendent" claims if they "derive from a common nucleus of operative fact" and were of such a character that a plaintiff "would ordinarily be expected to try them all in one judicial proceeding." *Id.* at 725, 86 S.Ct. 1130. Repeatedly, however, although having the opportunity, the High Court has failed to resolve the issue of whether the principles articulated in *Gibbs* extend to pendent parties, i.e. to cases such as the instant one, where jurisdiction properly exists as to one defendant, but the case or controversy extends to defendants who are not within the court's express jurisdiction under Article III. *See, e.g., Zahn v. Int'l Paper Co.*, 414 U.S. 291, 94 S.Ct. 505, 38 L.Ed.2d 511 (1973), *Aldinger v. Howard*, 427 U.S. 1, 96 S.Ct. 2413, 49 L.Ed.2d 276 (1976), *Owen Equipment & Erection Co. v. Kroger*, 437 U.S. 365, 98 S.Ct. 2396, 57 L.Ed.2d 274 (1978).[8]

The Ninth Circuit, however, has shown no such hesitancy. In *Ayala v. United States*, the court addressed its earlier case, *Hymer v. Chai*, 407 F.2d 136 (9th Cir.1969).[9] The court explained that its rejection of pendent party jurisdiction in *Hymer* "was not based on a ferreted congressional disinclination, but rather rested on a more fundamental constitutional consideration." *Ayala*, 550 F.2d at 1199–1200. Neither *Ayala* nor *Hymer*, however, suggest any principled means of distinguishing between pendent party and pendent claim jurisdiction.[10] While in neither case

does the court have express jurisdiction over the pendent issue or party, in both situations it has jurisdiction over the case as required by Article III. Moreover, in both situations under certain circumstances, such as those at bar, a plaintiff would be expected to try both defendants in a single litigation.

■ Whatever its deficiency in analysis, *Ayala* clearly expressed the Ninth Circuit's view that Article III does not permit pendent party jurisdiction. No decision of the United States Court of Appeals for the Ninth Circuit or the United States Supreme Court has overruled *Ayala*'s rejection of pendent party jurisdiction on constitutional grounds, nor does passage of § 1367 alter the holding. Thus, *Ayala* remains the law on pendent party jurisdiction in the Ninth Circuit, and this court, being bound, may not exercise jurisdiction over plaintiffs' claims against the Union.

Forcing plaintiffs to litigate one case in two separate forums in these days of high litigation costs and limited judicial resources can, at best, only be described as an unfortunate result. *See Rosado v. Wyman*, 397 U.S. 397, 405, 90 S.Ct. 1207, 25 L.Ed.2d 442 (1970)(Pendent jurisdiction rests on "the commonsense policy" of "the conservation of judicial energy and the avoidance of multiplicity of litigation"). Of course if such a result is the mandate of the Constitution, so be it. Nonetheless, without analysis justifying it, the result seems perverse. As I have had occasion to remark more than once, our Constitution is not only an "embodiment of our most precious values," it is also "a great document of practical governance." *California Prolife Council v. Scully*, 989 F.Supp. 1282, 1302 (E.D.Cal.1998)(quoting *Potter v.*

---

8. Relying on *Gibbs*, however, a significant number of circuits concluded, even before the passage of § 1367, that pendent party jurisdiction existed, at least under certain circumstances. A collection of cases and examination of the variety of circumstances may be found in Charles A. Wright, Arthur R. Miller and Edward H. Cooper, 13B *Federal Practice and Procedure*, § 3567.2 (Pendent Parties).

9. The court also rested on its decision in *Williams v. United States*, 405 F.2d 951 (9th

Cir.1969), a case perhaps less pertinent to the issues tendered here since it arose in the Federal Tort Claims context.

10. *Hymer* rested in significant part on the circuit's still earlier case, *Kataoka v. May Department Stores Co.*, 115 F.2d 521 (9th Cir.1940). Given that *Kataoka* preceded *Gibbs*, the court had no ability to examine the rationale for pendent claim jurisdiction and determine whether there was any basis for distinguishing the two.

*Rain Brook Feed Co., Inc.*, 530 F.Supp. 569, 580 (E.D.Cal.1982)).

Despite my firm conviction that the result of *Ayala* does not comport with practical governance, and even in the absence of articulated justification, I am, of course, bound by it unless overtaken by subsequent law. I must conclude that *Ayala* represents the last expression of the law by which I am bound. While I can hope that the Court of Appeals will reconsider, until then I am obligated to apply *Ayala*'s holding.

### III.

### ORDER

For all the above reasons, plaintiffs' causes of action against the Union are DISMISSED for want of jurisdiction.

IT IS SO ORDERED.