**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**1199, NATIONAL UNION OF HOSPITAL AND HEALTH CARE EMPLOYEES, AFL–CIO, Intervenor,**

v.

**SANDPIPER CONVALESCENT CENTER; Sandpiper Village, Respondent.**

No. 86–1192.

United States Court of Appeals, Fourth Circuit.

Argued March 2, 1987.

Decided July 29, 1987.

Don Terrance Carmody (Carmen M. DiRienzo; Carmody & DiRienzo, on brief) for respondent.

Marilyn Elaine Patrick, N.L.R.B. (Rosemary M. Collyer, Gen. Counsel, John E. Higgins, Jr., Deputy Gen. Counsel, Robert E. Allen, Associate Gen. Counsel, Elliott Moore, Deputy Associate Gen. Counsel, Peter Winkler, Supervisory Atty., Sandra Elligers, on brief), for petitioner.

Robert S. Giolito; Stanford, Fagan and Giolito, on brief, for intervenor.

Before PHILLIPS and WILKINSON, Circuit Judges, and YOUNG, United States District Judge for the District of Maryland, Sitting by Designation.

WILKINSON, Circuit Judge:

The National Labor Relations Board petitions for enforcement of its order requiring Sandpiper Convalescent Center and Sandpiper Village to bargain with the National Union of Hospital and Health Care Employees, AFL–CIO, and to reinstate six employees laid off while Sandpiper's objections to a representation election were pending. Sandpiper refused to bargain with the union on the ground that the representation election was invalid. It also claimed that the unilateral layoffs were permissible because, even if the election were valid, it had no duty to bargain until the union was certified.

The Board found that the employer violated sections 8(a)(5) and (1) of the National Labor Relations Act, 29 U.S.C. § 158(a)(5), (a)(1). It issued a bargaining order and ordered reinstatement of the laid off employees. Because we believe that the union was properly certified and that the employer's duty to bargain runs from the date of the election, we order enforcement.

## I.

The employer operates a convalescent center and retirement village at Mt. Pleas-

ant, South Carolina. On July 30, 1984, the union filed a representation petition for the employer's service and maintenance employees. The employer and union stipulated that the Center and Village were a joint employer and jointly met the criteria for the Board's jurisdiction. A representation election was held by secret ballot on September 28, 1984. The unit employees voted 44 to 35, with one challenged ballot, in favor of representation by the union.

The employer filed a timely objection to the election, alleging that a television newscast aired between the two polling periods tainted the process. The Regional Director recommended that the Board overrule the objection and certify the union. The employer filed exceptions, but the Board ultimately certified the union as bargaining representative on April 16, 1985.

On October 16, 1984, after the election but while the employer's objections were pending, the employer laid off six employees. It stated that Medicaid cuts precipitated the layoff. The union filed an unfair labor practice charge alleging that the employer violated sections 8(a)(5) and (1) of the Act by failing to bargain over the layoff. On April 23, 1985, after its certification, the union requested that the employer enter negotiations for a collective bargaining agreement. When the employer refused, the union again filed section 8(a)(5) and (1) charges. Complaints were issued for both charges.

The two charges were consolidated, and a hearing was held before an administrative law judge on June 20, 1985. The employer claimed, among other things, that 1) it had no duty to bargain prior to the union's actual certification, 2) it had no duty to bargain over the layoff because it was compelled by economic need, 3) the layoff was not a mandatory subject of bargaining, and 4) the actions of the Regional Director under the Federal Senior Executive Service compensation scheme of the Civil Service Reform Act, 5 U.S.C. § 3131 *et seq.*, 4311 *et seq.*, violated its right to due process and equal protection. It also challenged the union's certification on the grounds that the television newscast interfered with the election and that the Village and Center were erroneously designated as joint employers for purposes of unit determination. The administrative law judge rejected all of these claims, and ordered the employer to bargain and to provide backpay to the employees who were laid off.

The Board affirmed the administrative law judge's findings and issued a bargaining order. Instead of requiring only backpay for the laid off employees, however, the Board modified the ALJ's order to include reinstatement. The Board now seeks enforcement of its order.

## II.

The employer contends that it did not violate section 8(a)(5) by failing to bargain about the layoff. It argues that its duty to bargain did not arise until after its objections to the election were resolved, and the union was certified. We disagree.

In *Mike O'Connor Chevrolet Co., Inc.,* 209 NLRB 701 (1975), *remanded on other grounds,* 512 F.2d 684 (8th Cir.1975), the Board held that, absent compelling economic reasons, an employer who unilaterally changes terms and conditions of employment during the pendency of objections may be charged with a section 8(a)(5) violation once the union is certified. The purpose of the rule is to prevent employers from postponing their bargaining obligation through dilatory tactics and spurious objections. *Fugazy Continental Corp. v. NLRB,* 725 F.2d 1416, 1421 (D.C. Cir.1984). Employers who make unilateral changes during the pendency of objections to a representation election thus do so at their peril. "If the election challenge proves fruitless, an order by the Board based on the refusal to bargain will be enforced." *NLRB v. W.R. Grace & Co.,* 571 F.2d 279, 282 (5th Cir.1978); *NLRB v. McCann Steel Co.,* 448 F.2d 277, 279 (6th Cir.1971). Such a rule recognizes that representation elections are entitled to a presumption of validity and that the choice of

unit employees should be promptly effectuated.[1]

The employer argues, however, that the layoffs were permissible under an exception to the *Mike O'Connor* rule which allows unilateral action prior to certification for compelling economic reasons. *Mike O'Connor*, 209 NLRB at 703; *Sunstrand Heat Transfer, Inc. v. NLRB*, 538 F.2d 1257, 1259 (7th Cir.1976) (no duty to bargain prior to certification about effects of layoff where compelling economic considerations were present). Here, the employer failed to establish any compelling economic need for the layoff that would mitigate its duty to bargain.

■ Sandpiper claims that the testimony of Center administrator Philip Waters adequately established compelling economic need. Waters testified before the administrative law judge that Medicaid cuts decreased the facilities' income and made the layoffs necessary to absorb the loss and to "get our staff more in line with the other Nursing Homes in the Charleston Area and in the State." The administrative law judge found that, aside from Waters' bare assertion, the employer offered no evidence of the Medicaid cut or its impact on the business. In addition, it made no showing that Sandpiper's staff was oversized or otherwise out of line with other facilities in the area. The administrative law judge also found that Sandpiper hired two employees shortly before the layoff and hired numerous employees soon after it, including 13 employees in the same job classification as the laid off employees. These findings, affirmed by the Board, are supported by substantial evidence.[2]

### III.

We cannot accept the employer's related contention that the decision to lay off was not a mandatory subject of bargaining under *First National Maintenance Corp. v. NLRB*, 452 U.S. 666, 101 S.Ct. 2573, 69 L.Ed.2d 318 (1981).

Section 8(d) of the Act defines the duty to bargain under section 8(a)(5). It requires the employer to bargain over wages, hours and other terms and conditions of employment. 29 U.S.C. § 158(d). Bargaining is mandatory for these subjects; an employer may not make changes in such matters unilaterally. *NLRB v. C & C Plywood Corp.*, 385 U.S. 421, 425, 87 S.Ct. 559, 562, 17 L.Ed.2d 486 (1967). In *First National Maintenance v. NLRB*, the Supreme Court made clear that the detrimental impact of a managerial decision upon continued employment will not alone bring that decision within Section 8(d). 452 U.S. at 677, 101 S.Ct. at 2580. It held further that the employer had no duty to bargain over a management decision "involving a change in the scope and direction of the enterprise," a decision akin to the decision to stay in business itself. The Board has subsequently held *First National Maintenance* to apply to a corporate decision to close down one of its facilities as part of a consolidation effort. *Otis Elevator*, 269 NLRB 891 (1984). It has distinguished such fundamental managerial decisions, however, from those intended to reduce labor costs, concluding that a reduction of labor costs must be pursued through the collective bargaining process. *Compare First National Maintenance, supra, with Fibreboard Corp. v. NLRB*, 379 U.S. 203, 85 S.Ct. 398, 13 L.Ed.2d 233 (1964), *and Otis Elevator supra, with Nurminco, Inc.*, 274 NLRB 264 (1984).

■ In this case, the employer failed to establish that the layoff represented a fun-

---

**1.** We also reject the employer's assertion that a conflict exists between the Board's holding in *Mike O'Connor Chevrolet Co., Inc.*, 209 NLRB 701 (1975), and *Linden Lumber v. NLRB*, 419 U.S. 301, 95 S.Ct. 429, 42 L.Ed.2d 465 (1974). The question in *Linden Lumber* was whether an employer has a duty to bargain where no representation election has occurred. It simply does not address the question of whether, after a representation election, the duty to bargain arises only after all objections to the election have been settled.

**2.** The Board adopted the ALJ's findings with one modification. It noted an inconsistency in the ALJ's findings on whether the layoff was compelled by economic conditions. The ALJ found no economic justification for the layoff in his substantive findings of fact but, in the later footnote, declined to order reinstatement because "the layoff itself was for economic reasons." The Board resolved this inconsistency by holding that the ALJ's initial findings on the issue were supported by substantial evidence.

damental decision to close down any part of its business or to change its nature or scope. After the layoff, which involved but six of eighty-five unit employees, the employer continued to operate much as before, pursuing the same business, in the same manner, at the same locations. As its decision reflected more "a desire to reduce labor costs," *First National Maintenance*, 452 U.S. at 680, 101 S.Ct. at 2581, than an exercise of entrepreneurial prerogative or control, we agree with the Board that it was amenable to resolution through the collective bargaining process. The line may admittedly be a fine one in some cases, but it has been drawn by the Supreme Court to accommodate management's interest under the NLRA in the essential conduct of an enterprise and a union's interest in more secure employment for those it represents.

## IV.

The employer also claims that the union's certification as bargaining agent was improper. It contends that a television newscast interfered with the election and that the designation of the Center and the Village as joint employer was erroneous. Neither claim has merit.

The first polling period for the election closed at 1:00 p.m., and the second period was scheduled to begin at 10:00 p.m. Between these periods, the anchor on the local six o'clock news stated:

Workers and labor leaders are being careful not to adversely affect today's union election at the Sandpiper Convalescent Center. Union leaders refused to comment on the voting as they left the Center today. Audreyole Parker was stationed outside the Mt. Pleasant facility. William Boddie of the National Labor Relations Board tells her more votes have to be cast.

The scene then switched to a reporter at the employer's facility who interviewed the Board agent conducting the election. The Board agent stated, "We have to come back tonight for a second session, okay, and at the end of that session we'll tally

the ballots and tell what the result is." The anchor then stated:

Sandpiper and the workers have five days to file any objections in today's election. If there are none, the results will be certified by the Labor Relations Board. That will clear the way for the Union to begin bargaining on behalf of the 89 employees.

The employer alleges that the newscast interfered with the free choice of employees who had yet to vote in the 10:00 p.m. poll by implying that the union had already won the election. The Board rejected this claim.

■ Obviously, the party challenging a Board's decision has the "heavy burden," *Shoreline Enterprises of America, Inc. v. NLRB*, 262 F.2d 933, 942 (5th Cir.1959), of showing by specific evidence that the fairness of the election has been prejudiced. *NLRB v. Carolina Natural Gas*, 386 F.2d 571, 575 (4th Cir.1967); *NLRB v. Mattison Machine Works*, 365 U.S. 123, 124, 81 S.Ct. 434, 435, 5 L.Ed.2d 455 (1961). The employer failed to carry its burden in this case. First, it offered no evidence that any employees were influenced by or even saw the broadcast. Second, because 80 of 85 eligible employees voted, and the union's margin of victory was nine votes, the broadcast did not depress turnout enough to change the outcome of the election. Third, while the anchor's statements regarding the election were inaccurate, the context of the broadcast made it clear that he was not part of the election process itself. He did not profess to have any inside information or to speak for the union or for the Board. In addition, the Board representative correctly stated that some of the employees had yet to vote and that the election results were not yet known. A strong showing of interference by third parties is required to overturn an election. *NLRB v. IDAB, Inc.*, 770 F.2d 991, 999 (11th Cir.1985), *quoting Bush Hog, Inc. v. NLRB*, 420 F.2d 1266, 1269 (5th Cir.1969). In particular, we decline to hold an election hostage to every stray piece of public commentary on it. There is no indication that the free choice of employees was compromised.

■ We also are not persuaded by the employer's objection that the Center and the Village were incorrectly designated as a "joint employer" for purposes of determining an appropriate bargaining unit. Here the employer not only stipulated to the joint employer status of the Center and the Village; it failed to challenge the appropriateness of the unit or its joint employer status in its objections to the election or in the exceptions to the Regional Director's report. In the absence of newly discovered evidence or special circumstances, a respondent in a section 8(a)(5) proceeding is not entitled to litigate issues that were or could have been litigated in a prior representation proceeding. *See Pittsburgh Plate Glass Company v. NLRB*, 313 U.S. 146, 162, 61 S.Ct. 908, 917, 85 L.Ed. 1251 (1941). No special circumstances are present here.

### V.

The employer's next contention is that all of the Regional Director's activities in this case are void because his participation in the Senior Executive Service compensation scheme of the Civil Service Reform Act, *see* 5 U.S.C. § 3131, *et seq.*, 4311 *et seq.*, interfered with his ability to perform his duties impartially and deprived the employer of its right to due process and equal protection. Specifically, respondent claims that the financial incentives for NLRB Regional Directors to take prompt action on representation petitions and unfair labor practice charges establish an impermissible risk of bias on their part.

■ The Sixth Circuit addressed and rejected identical arguments in *NLRB v. Ohio New and Rebuilt Parts, Inc.*, 760 F.2d 1443 (6th Cir.1985). We agree with its holding in that case. Suffice it to say that any bias in the executive compensation scheme is not toward outcomes but toward the efficient and effective conduct of government business. Neither Congress nor the NLRB is constitutionally disabled from fashioning incentives for the prompt and impartial discharge of public business, a purpose all parties to a proceeding would appear to share. Moreover, dispatch is but one of several factors used to evaluate the performance of NLRB Regional Directors. Others include the quality and completeness of casehandling, the achievement of agency objectives, good public relations with management, labor, and members of the Bar, the maintenance of good staff relations, and the proper development of subordinates under the Regional Director's supervision. *See, Id.* at 1452 (Appendix A). The employer has simply failed to translate its rather generalized grievances with the Senior Executive Service pay system into any realistic possibility of a biased decision in this case.

### VI.

Finally, the employer attacks the remedies imposed upon it by the Board. According to the employer, both the bargaining order and the order to reinstate the laid off employees were impermissible. Again, we disagree.

Section 10(c) of the Act empowers the Board to remedy the effects of unfair labor practices by "such affirmative action including reinstatement of employees with or without back pay, as will effectuate the policies of this Act." 29 U.S.C. § 160(c). The Board has "primary responsibility and broad discretion to devise remedies that effectuate the policies of the Act, subject only to limited judicial review." *Sure-Tan, Inc. v. NLRB*, 467 U.S. 883, 898–99, 104 S.Ct. 2803, 2812, 81 L.Ed.2d 732 (1984). Courts may not lightly substitute their own judgment on "how best to undo the effects of unfair labor practices." *Id.* at 899, 104 S.Ct. at 2812.

■ In this case, the bargaining order is an appropriate remedy. We are unpersuaded by employer's contention that the high rate of turnover at the Center and Village requires us to deny enforcement. Where a union is certified after a representation election, the employer cannot challenge majority status until it has bargained with the union for a reasonable period, usually one year. *Brooks v. NLRB*, 348 U.S. 96, 75 S.Ct. 176, 99 L.Ed. 125 (1954); *see also NLRB v. Mr. B. IGA, Inc.*, 677

F.2d 32, 34 (8th Cir.1982). Here the employer refused to bargain at all.

We hold also that the Board did not err in imposing the statutory remedy of reinstatement for employees laid off in violation of section 8(a)(5). *Fibreboard,* 379 U.S. at 208, 85 S.Ct. at 401.

The Board's order is hereby

ENFORCED.