[No. S172377. Jan. 24, 2011.]

INTERNATIONAL ASSOCIATION OF FIRE FIGHTERS, LOCAL 188, AFL-CIO, Plaintiff and Appellant, v.
PUBLIC EMPLOYMENT RELATIONS BOARD, Defendant and Respondent;
CITY OF RICHMOND, Real Party in Interest and Respondent.

262

**COUNSEL**

Davis & Reno, Duane W. Reno and Alan C. Davis for Plaintiff and Appellant.

Woodley & McGillivary, Thomas A. Woodley, Kurt Rumsfeld and Baldwin Robertson for International Association of Fire Fighters as Amicus Curiae on behalf of Plaintiff and Appellant.

Davis, Cowell & Bowe, W. David Holsberry and Paul L. More for California Professional Firefighters as Amicus Curiae on behalf of Plaintiff and Appellant.

Tami R. Bogert, Wendi L. Ross, Alicia A. Clement and Kristin L. Rosi for Defendant and Respondent.

Renne Sloan Holtzman Sakai, Jeffrey Sloan, Charles D. Sakai, Randy Riddle, Steve Cikes, K. Scott Dickey and Merlyn Goeschl for Real Party in Interest and Respondent.

Goldfarb & Lipman, James T. Diamond, Jr., and Xochitl Carrion for League of California Cities and California State Association of Counties as Amici Curiae on behalf of Real Party in Interest and Respondent.

Atkinson, Andelson, Loya, Ruud & Romo, Warren S. Kinsler, Cathie L. Fields and Barbara J. Ginsberg for Education Legal Alliance of the California School Boards Association and the Inland Personnel Council as Amici Curiae on behalf of Real Party in Interest and Respondent.

## OPINION

**KENNARD, Acting C. J.**—Facing a budget crisis, the City of Richmond decided to lay off 18 of its firefighter employees. The firefighters' union tried to negotiate with the city to avert the layoffs, but the city refused to bargain over its layoff decision. The union turned to the Public Employment Relations Board (PERB), the state agency charged with enforcing state labor laws affecting local government employees. PERB would not issue a complaint, however, because it concluded that the city's refusal to bargain had not violated state law. The union then brought an action in superior court, but that court agreed with PERB that no unfair labor practice had occurred. On the union's appeal, the Court of Appeal affirmed the superior court's judgment.

Here, we address two issues: (1) If, after receiving an unfair labor practice charge, PERB decides not to issue a complaint, is that decision ever subject to judicial review? (2) Is a city's decision to lay off firefighters for fiscal reasons a matter that is subject to collective bargaining?

On the first question, we agree with the Court of Appeal that although PERB's refusal to issue a complaint is generally not subject to judicial review, this general rule has narrow exceptions. One of these exceptions applies when, as the union alleges here, PERB's refusal is based on a clearly erroneous statutory construction.

On the second question, we conclude, as did the Court of Appeal, that when a city, faced with a budget deficit, decides that some firefighters must be laid off as a cost-saving measure, the city is not required to meet and

confer with the firefighters' authorized employee representative before making that initial decision. In this situation, the city's duty to bargain with the employee representative extends only to the implementation and effects of the layoff decision, including the number and identity of the employees to be laid off, and the timing of the layoffs.

## I

To reduce labor costs in response to a budget shortfall, the City of Richmond in late 2003 decided to lay off 18 of its 90 firefighters, effective December 31 of that year. The city sent layoff notices to the firefighters whose positions were being eliminated. During November and December 2003, the city on three occasions met with its firefighters' authorized representative, International Association of Fire Fighters, Local 188, AFL-CIO, to discuss the effects of the layoffs on the remaining firefighters. Local 188 sought to avert the layoffs by arguing that other cost-saving measures were available that would make the layoffs unnecessary, but the city rejected that argument.

In January 2004, Local 188 filed an unfair labor practice charge with PERB, alleging that the city had violated California's Meyers-Milias-Brown Act (Gov. Code, § 3500 et seq.; MMBA) by, among other things, failing to meet and confer with it over the city's layoff decision. PERB's agent, Regional Attorney Kristin L. Rosi, declined to issue a complaint, explaining her reasons in a "partial warning letter" to Local 188. The letter stated that Local 188's unfair practice allegations failed to state a prima facie case for relief because a decision to lay off employees, including firefighters, is not subject to collective bargaining and because, although the effects of a layoff decision are subject to bargaining, Local 188 had made no proposals concerning the effects of the city's decision to lay off firefighters and the city had not declined to bargain concerning them.

Local 188 filed an amended unfair practice claim that focused on the purported safety consequences of the layoffs, alleging that reducing the number of city-employed firefighters meant that at any given time fewer fire engines and firetrucks could be deployed for fire suppression work, and this in turn would increase the risk of injury to the remaining firefighters. The union admitted that it had made no specific proposals to the city regarding firefighter workload and safety issues under the newly reduced staffing levels.

In April 2004, PERB Regional Attorney Rosi declined to issue a complaint on behalf of Local 188 on the charge that the city had committed an unfair labor practice by failing to meet and confer over the layoff decision or its effects. Local 188 filed an administrative appeal of that ruling.

A panel of three PERB board members issued a decision affirming Regional Attorney Rosi's ruling. The PERB panel concluded that a city's decision to lay off some of its employees is not subject to collective bargaining and that Local 188, by repeatedly seeking to bargain over the layoff decision itself rather than its effects, had waived its rights to bargain over those effects.

In January 2005, Local 188 petitioned the Court of Appeal for a writ of mandate. The Court of Appeal denied the petition " 'without prejudice to its being refiled in the Contra Costa County Superior Court.' " Local 188 then filed a petition for writ of mandate in superior court, challenging PERB's conclusion that a city's decision to lay off firefighters is not subject to collective bargaining even though the effect of the decision is to increase the dangers faced by the remaining firefighters while engaged in fire suppression.

After receiving opposition from PERB, and from the city, and holding a hearing, the superior court denied Local 188's mandate petition. The superior court concluded that it had jurisdiction to review PERB's decision not to issue a complaint on Local 188's unfair labor practice charge, but the court agreed with PERB that a city's layoff decision is not within the scope of representation under the MMBA. Local 188 appealed the superior court's judgment denying the mandate petition.

The Court of Appeal affirmed the trial court's judgment denying Local 188's writ petition. Regarding the availability of judicial review of a PERB decision not to issue an unfair labor practice complaint, the Court of Appeal agreed with PERB and the city that such decisions generally are not subject to judicial review. It also concluded, however, that this general rule is subject to three narrow exceptions under which judicial review is available, by petitioning the superior court for a writ of mandate, to determine whether PERB's decision not to issue a complaint (1) violates a constitutional right, (2) exceeds a specific grant of authority, or (3) is based on an erroneous statutory construction. In reaching that conclusion, the Court of Appeal relied heavily on this court's decision in *Belridge Farms v. Agricultural Labor Relations Bd.* (1978) 21 Cal.3d 551 [147 Cal.Rptr. 165, 580 P.2d 665] (*Belridge Farms*). That decision construed the judicial review provisions of the Alatorre-Zenovich-Dunlap-Berman Agricultural Labor Relations Act of 1975 (Lab. Code, § 1140 et seq.; ALRA).

Regarding whether a city's decision to lay off firefighters for fiscal reasons is subject to collective bargaining, the Court of Appeal concluded that this issue was subject to judicial review to determine whether PERB's decision not to issue an unfair labor practice complaint was based on an erroneous statutory construction. On the merits, the Court of Appeal concluded that PERB had not erred in its construction of Government Code section 3504, the MMBA provision defining the scope of a local public entity's duty to meet and confer with employee representatives. In reaching that conclusion, the Court of Appeal resolved a dispute between the parties regarding the meaning and effect of our decision in *Fire Fighters Union v. City of Vallejo* (1974) 12 Cal.3d 608 [116 Cal.Rptr. 507, 526 P.2d 971] (*Vallejo*). The Court of Appeal read *Vallejo* as establishing or reaffirming a rule that under the MMBA, a "decision to lay off firefighters is not subject to negotiation," although "the effects of that decision, including the workload and safety of the remaining employees, are properly the subject of collective bargaining."

## II

When an employee or employee representative complains to PERB that a local government employer has refused to meet and confer over a mandatory subject of bargaining, PERB processes the complaint as an unfair labor practice charge. (Gov. Code, § 3509, subd. (b).) The charge is assigned for processing to a "Board agent." (Cal. Code Regs., tit. 8, § 32620, subd. (a).) If the agent "concludes that the charge or the evidence is insufficient to establish a prima facie case," the agent refuses to issue a complaint, an action that constitutes a dismissal of the charge. (*Id.*, § 32630.) The complaining party may appeal such a dismissal to PERB's five-member board. (*Id.*, § 32635, subd. (a).)

The MMBA provides for judicial review of PERB decisions in subdivision (a) of Government Code section 3509.5, which states: "Any charging party, respondent, or intervenor aggrieved by a final decision or order of the board in an unfair practice case, *except a decision of the board not to issue a complaint in such a case*, . . . may petition for a writ of extraordinary relief from that decision or order."[1] (Italics added.) Subdivision (b) of that section states that the "petition for a writ of extraordinary relief shall be filed in the district court of appeal having jurisdiction over the county where the events giving rise to the decision or order occurred."

The Court of Appeal here agreed with PERB and the city that the plain language of section 3509.5 establishes that a PERB decision not to issue a

[1] All further statutory references are to the Government Code unless otherwise indicated. PERB's jurisdiction under the MMBA covers labor relations for most employees of cities and other local public agencies, but not peace officers, management employees, the City of Los Angeles, or the County of Los Angeles. (§§ 3509, subds. (d)–(f), 3511.)

complaint is not reviewable under that statute. But the Court of Appeal did not agree that the Legislature, through this provision, has precluded superior courts from exercising traditional mandate jurisdiction to consider challenges to such decisions.

The Court of Appeal observed that many other labor relations statutes, including the federal National Labor Relations Act (29 U.S.C. § 151 et seq.; NLRA) and the state ALRA, contain provisions that are similar to section 3509.5 in that they specify a procedural mechanism for judicial review of agency decisions but exclude from the decisions reviewable in that manner a decision not to issue an unfair labor practice complaint. Because both the MMBA and the ALRA were patterned after the federal NLRA, California courts seeking guidance for interpreting these state labor relations laws have consulted decisions interpreting parallel provisions of the NLRA. (See *Vallejo, supra,* 12 Cal.3d 608, 616–617; *City of El Cajon v. El Cajon Police Officers' Assn.* (1996) 49 Cal.App.4th 64, 72, fn. 3 [56 Cal.Rptr.2d 723].)

In *Belridge Farms, supra,* 21 Cal.3d 551, this court, after considering decisions under the federal NLRA, held that a refusal to issue a complaint under the state ALRA is judicially reviewable only in limited circumstances. (*Belridge Farms,* at p. 557.) Because the ALRA was derived from the NLRA and contains a judicial review provision (Lab. Code, § 1160.8) that is, with one exception not relevant here, "identical" (*Belridge Farms,* at p. 556) to the NLRA's judicial review provision (29 U.S.C. § 160(f)), this court in *Belridge Farms* considered federal court decisions under the NLRA. Federal courts have held that a refusal to issue a complaint under the NLRA is generally not judicially reviewable, but also that federal courts will exercise equitable powers to review such refusals "when the complaining party raises a colorable claim that the decision violates [a] constitutional right [citations] or exceeds a specific grant of authority [citations]" or is "based on an erroneous construction of an applicable statute." (*Belridge Farms, supra,* at pp. 556–557; see Annot. (1984) 69 A.L.R.Fed. 870 [collecting NLRA cases].) This court concluded that our state Legislature "intended to adopt the federal rule limiting review" to these situations. (*Belridge Farms,* at p. 557.)

As PERB and the city strenuously insist, and as the Court of Appeal acknowledged, the MMBA's judicial review provision uses language that differs from the language in the judicial review provisions of the federal NLRA and the state ALRA. Unlike the MMBA, neither the NLRA nor the ALRA expressly excludes from its judicial review provision an agency decision not to issue a complaint. Instead, those federal and state labor relations laws both limit the judicial review provision to final decisions of the administrative agency's governing board. (29 U.S.C. § 160(f); Lab. Code, § 1160.8.) Under those laws, the agency's general counsel has authority to

refuse to issue a complaint, and such a refusal is not appealable to the agency's governing board. (29 U.S.C. § 153(d); Lab. Code, § 1149.) Because a refusal to issue a complaint is never a final decision of the governing board, it does not fall within the judicial review provisions of the NLRA and the ALRA. (*Belridge Farms, supra*, 21 Cal.3d 551, 556–557; see *Associated Builders, etc. v. Irving* (4th Cir. 1979) 610 F.2d 1221, 1224–1226.)

■ We agree with the Court of Appeal, however, that the difference in wording between, on the one hand, the judicial review provisions of the federal NLRA and the state ALRA and, on the other hand, the judicial review provision of California's MMBA, is not significant on the issue we consider here. The MMBA's judicial review provision is worded differently because under the MMBA the governing board, and not the agency's general counsel, has final agency authority to decide whether to issue an unfair labor practice complaint. (Cal. Code Regs., tit. 8, § 32635.) Had the Legislature made the MMBA's judicial review provision similar in language to the judicial review provisions of the federal NLRA and the state ALRA by permitting judicial review of any final decision of the board, therefore, all board decisions refusing to issue complaints would have been subject to full judicial review. To ensure that a decision by PERB under the MMBA refusing to issue a complaint, like similar decisions under the NLRA and the ALRA, would not routinely be subjected to full judicial review, the state Legislature needed to use language making that intent clear, as it did in section 3509.5, subdivision (a). That provision does not, however, expressly bar superior courts from exercising their traditional mandate jurisdiction to determine whether PERB's refusal to issue a complaint is invalid on one or more of the narrow grounds under which similar decisions may be challenged under the NLRA and the ALRA, as recognized by this court in *Belridge Farms, supra*, 21 Cal.3d 551, 556–557.

■ Limiting judicial review of an agency decision not to issue an unfair labor practice to the three grounds articulated in *Belridge Farms, supra*, 21 Cal.3d 551, strikes an appropriate balance between the Legislature's interest in giving such agencies broad discretionary authority and the courts' obligation to discharge their constitutional powers and responsibilities. The first of these grounds—that the agency decision violates a constitutional right—merely respects and protects the state Constitution's hierarchical authority over statutory law, while the second ground—that the agency has exceeded its statutory powers—is necessary to ensure that administrative agencies do not purport to exercise powers beyond those actually delegated to them by the Legislature. The third ground—that the agency action is based on an erroneous statutory construction—allows courts to correct a clearly erroneous construction of the MMBA by PERB when that erroneous construction potentially affects a large class of cases and threatens to frustrate an important

policy that the MMBA was enacted to further. Judicial review under this ground furthers the Legislature's purpose in creating the agency and defining the scope of its authority.

As both this court and the United States Supreme Court have explained, eliminating all forms of judicial review of an administrative agency's decisions could raise serious constitutional issues. In particular, when a federal administrative action is challenged on the ground that it violates a constitutional right, "the availability of judicial review is presumed," and statutory provisions will not be construed as foreclosing such review "unless Congress' intent to do so is manifested by ' "clear and convincing" ' evidence." (*Califano v. Sanders* (1977) 430 U.S. 99, 109 [51 L.Ed.2d 192, 97 S.Ct. 980]; see also *INS v. St. Cyr* (2001) 533 U.S. 289, 298 [150 L.Ed.2d 347, 121 S.Ct. 2271] ["strong presumption in favor of judicial review of administrative action"]; *Bowen v. Mich. Academy of Family Physicians* (1986) 476 U.S. 667, 670 [90 L.Ed.2d 623, 106 S.Ct. 2133] ["strong presumption that Congress intends judicial review of administrative action"].) A similar presumption operates when it is claimed that a federal administrative agency's action is in excess of its delegated powers and contrary to a specific statutory prohibition. (*Leedom v. Kyne* (1958) 358 U.S. 184, 188 [3 L.Ed.2d 210, 79 S.Ct. 180]; see also *Staacke v. U.S. Secretary of Labor* (9th Cir. 1988) 841 F.2d 278, 281.)

■ The California Constitution gives rise to a presumption in favor of at least limited judicial review of state administrative agency actions. It does so through section 10 of article VI, which, as relevant here, gives superior courts "original jurisdiction in proceedings for extraordinary relief in the nature of mandamus, certiorari, and prohibition." Traditional mandamus review is available "to compel the performance of an act which the law specially enjoins, as a duty resulting from an office, trust, or station." (Code Civ. Proc., § 1085, subd. (a).) Recognizing that "[t]he power of superior courts to perform mandamus review of administrative decisions derives in part" from this constitutional provision, this court has said that " '[t]he jurisdiction thus vested may not lightly be deemed to have been destroyed.' " (*County of San Diego v. State of California* (1997) 15 Cal.4th 68, 87 [61 Cal.Rptr.2d 134, 931 P.2d 312]; see also *In re Jessup* (1889) 81 Cal. 408, 470 [22 P. 1028] [the Legislature may not " 'substantially impair the constitutional powers of the courts, or practically defeat their exercise' " (italics omitted)].) This court will not infer a legislative intent to entirely deprive the superior courts of judicial authority in a particular area; the Legislature must have expressly so provided or otherwise clearly indicated such an intent. (*Garrison v. Rourke* (1948) 32 Cal.2d 430, 435–436 [196 P.2d 884]; accord, *County of San Diego v. State of California, supra*, at p. 87.)

In section 3509.5, the Legislature has not expressly provided or otherwise clearly indicated that under California's MMBA superior courts are prohibited in all circumstances from exercising traditional mandamus jurisdiction to review a PERB decision refusing to issue a complaint. In particular, the Legislature has not explicitly barred superior court traditional mandamus review in the limited circumstances in which such review is available for similar agency decisions under the federal NLRA and the state ALRA. Accordingly, we agree with the Court of Appeal here that when PERB refuses to issue a complaint under the MMBA, a superior court may exercise mandamus jurisdiction to determine whether PERB's decision violates a constitutional right, exceeds a specific grant of authority, or is based on an erroneous statutory construction. We stress, however, that it remains true that a refusal by PERB to issue a complaint under the MMBA is not subject to judicial review for ordinary error, including insufficiency of the evidence to support the agency's factual findings and misapplication of the law to the facts, or for abuse of discretion. Also, to avoid undue interference with the discretion that the Legislature has intended PERB to exercise, courts must narrowly construe and cautiously apply the exceptions we here recognize. (See *Thomas S. Castle Farms, Inc. v. Agricultural Labor Relations Bd.* (1983) 140 Cal.App.3d 668, 675 [189 Cal.Rptr. 687] [narrow construction of exceptions to judicial review limitation under the state ALRA]; *Cadiz v. Agricultural Labor Relations Bd.* (1979) 92 Cal.App.3d 365, 381–383 [155 Cal.Rptr. 213] [same]; *Nishikawa Farms, Inc. v. Mahony* (1977) 66 Cal.App.3d 781, 789–790 [136 Cal.Rptr. 233] [same]; *Baker v. Internat. Alliance of Theatrical Stage Employees* (9th Cir. 1982) 691 F.2d 1291, 1294–1297 [narrow construction of exceptions to judicial review limitation under the federal NLRA].)

## III

We now consider whether layoffs are a mandatory subject of collective bargaining under California's MMBA. Under that law, "[t]he duty to meet and confer in good faith is limited to matters within the 'scope of representation': the public employer and recognized employee organization have a 'mutual obligation personally to meet and confer promptly upon request by either party . . . and to endeavor to reach agreement on matters within the scope of representation prior to the adoption by the public agency of its final budget for the ensuing year.' " (*Claremont Police Officers Assn. v. City of Claremont* (2006) 39 Cal.4th 623, 630 [47 Cal.Rptr.3d 69, 139 P.3d 532] (*Claremont Police*), quoting § 3505.) The obligation to bargain "in good faith" means that the parties must genuinely seek to reach agreement, but the MMBA does not require that an agreement actually result in every instance, and it recognizes that a public employer has the ultimate power to reject employee proposals on any particular issue. (*Claremont Police*, at p. 630.)

Under the MMBA, the scope of representation covers "all matters relating to employment conditions and employer-employee relations, including, but not limited to, wages, hours, and other terms and conditions of employment, except, however, that the scope of representation shall not include consideration of the merits, necessity, or organization of any service or activity provided by law or executive order." (§ 3504.) This court has remarked that this definition of the scope of representation employs "two vague, seemingly overlapping phrases." (*Vallejo, supra,* 12 Cal.3d 608, 615; accord, *Claremont Police, supra,* 39 Cal.4th 623, 631.) The first phrase—"wages, hours, and other terms and conditions of employment"—if broadly read "could encompass practically any conceivable bargaining proposal," while the second phrase—"merits, necessity, or organization of any service"—could, if expansively interpreted, "swallow the whole provision for collective negotiation and relegate determination of all labor issues to the city's discretion." (*Vallejo, supra,* at p. 615.)

To resolve ambiguities and uncertainties inherent in the MMBA's definition of the scope of representation, this court has looked to federal precedents. This court has noted that the first key phrase in the MMBA's definition of the scope of representation—"wages, hours, and other terms and conditions of employment" (§ 3504)—was copied verbatim from the federal NLRA (see 29 U.S.C. § 158(d)), while the other key phrase—"merits, necessity, or organization of any service" (§ 3504)—was intended to incorporate the " 'general managerial policy' " exception developed by federal courts to determine the scope of representation under the NLRA. (*Building Material & Construction Teamsters' Union v. Farrell* (1986) 41 Cal.3d 651, 658, 663 [224 Cal.Rptr. 688, 715 P.2d 648] (*Building Material*); *Vallejo, supra,* 12 Cal.3d 608, 616–617.)

In relation to mandatory subjects of bargaining under the federal NLRA, the United States Supreme Court has identified three categories of management decisions. (*First National Maintenance Corp. v. NLRB* (1981) 452 U.S. 666, 676–680 [69 L.Ed.2d 318, 101 S.Ct. 2573].) In the first category are decisions that "have only an indirect and attenuated impact on the employment relationship" and thus are not mandatory subjects of bargaining. (*Id.* at p. 677.) Examples of decisions in this category are "choice of advertising and promotion, product type and design, and financing arrangements." (*Id.* at pp. 676–677.)

In the second category are decisions directly defining the employment relationship, such as wages, workplace rules, and the order of succession of layoffs and recalls. Decisions in this second category are always mandatory subjects of bargaining. (*First National Maintenance Corp. v. NLRB, supra,* 452 U.S. 666, 677.)

In the third category are management decisions that directly affect employment, such as eliminating jobs, but nonetheless may not be mandatory subjects of bargaining because they involve "a change in the scope and direction of the enterprise" or, in other words, the employer's "retained freedom to manage its affairs unrelated to employment." (*First National Maintenance Corp. v. NLRB, supra*, 452 U.S. 666, 677, fn. omitted.) Bargaining is not required for decisions in this category if they do not raise an issue that is "amenable to resolution through the bargaining process" (*id.* at p. 678), although the employer is normally required to bargain about the results or effects of such decisions (*id.* at p. 677, fn. 15). To determine whether a particular decision in this third category is within the scope of representation, the high court prescribed a balancing test, under which "in view of an employer's need for unencumbered decisionmaking, bargaining over management decisions that have a substantial impact on the continued availability of employment should be required only if the benefit, for labor-management relations and the collective-bargaining process, outweighs the burden placed on the conduct of the business." (*Id.* at p. 679.)

Applying this balancing test to layoff decisions, federal courts have held that bargaining is required when the layoffs result from an employer's decision to reassign bargaining unit work to independent contractors or to managers. (*First National Maintenance Corp. v. NLRB, supra*, 452 U.S. 666, 679–680; *Regal Cinemas, Inc. v. N.L.R.B* (D.C. Cir. 2003) 354 U.S. App.D.C. 398 [317 F.3d 300, 310–312].) On the other hand, federal courts do not require bargaining when layoffs result from profitability considerations that are independent of labor costs (*First National Maintenance Corp. v. NLRB*, at pp. 682–686), or from a management decision to shut down all or part of a business (*N.L.R.B. v. 1199, National Union of Hospital & Health Care Employees* (4th Cir. 1987) 824 F.2d 318, 321–322). When layoffs are motivated primarily by a desire to reduce labor costs, but are not the result of a decision to change the nature or scope of the enterprise, and do not involve reassigning bargaining unit work to non-bargaining-unit workers, federal courts require bargaining over the timing of the layoffs and the number and identity of the affected employees, but not necessarily over the layoff decision itself. (See *Pan American Grain Co., Inc. v. N.L.R.B.* (1st Cir. 2009) 558 F.3d 22, 27 [employees must be given the "opportunity to negotiate concessions that reduce overall costs and thus spare jobs"]; *N.L.R.B. v. 1199, National Union of Hospital & Health Care Employees, supra*, at p. 321 [stating that "a reduction of labor costs must be pursued through the collective bargaining process"].) The United States Supreme Court has said that a conflict resulting from an employer's desire to reduce labor costs is "peculiarly suitable for resolution within the collective bargaining framework" under the NLRA. (*Fibreboard Corp. v. Labor Board* (1964) 379 U.S. 203, 214 [13 L.Ed.2d 233, 85 S.Ct. 398].)

■    These federal decisions interpreting the federal NLRA have generally been followed by California courts construing California's MMBA. (See *Vallejo, supra*, 12 Cal.3d 608, 616–617.) Under the MMBA, the scope of a public employer's duty to bargain in regard to a layoff decision is generally determined by application of a balancing test that requires a local public entity employer to meet and confer "only if the employer's need for unencumbered decisionmaking in managing its operations is outweighed by the benefit to employer-employee relations of bargaining about the action in question." (*Building Material, supra*, 41 Cal.3d 651, 660.) Applying that test, California courts have determined that, under California's MMBA as under the federal NLRA, an employer's decision to eliminate bargaining unit jobs by reassigning the work to nonunit employees is a matter within the scope of representation and thus a mandatory subject of bargaining. (*Building Material, supra*, at p. 668; *Rialto Police Benefit Assn. v. City of Rialto* (2007) 155 Cal.App.4th 1295, 1309 [66 Cal.Rptr.3d 714].)

Here, the parties disagree generally about the proper result under the MMBA when the balancing test is applied to a layoff decision that does not involve transferring work outside the bargaining unit but is primarily motivated by a desire or need to reduce labor costs. More particularly, they disagree as to the significance of this court's decision in *Vallejo, supra*, 12 Cal.3d 608. Accordingly, we examine *Vallejo* in some detail.

In *Vallejo*, a city negotiated with the union representing its firefighter employees over the terms of a new contract, but the parties failed to agree on 28 issues. (*Vallejo, supra*, 12 Cal.3d 608, 611.) The city regarded four of those issues as being outside the scope of representation, and on that basis it refused to submit them to binding arbitration, while agreeing to arbitrate the other 24 issues.[2] (*Vallejo*, at p. 611.) Among the four disputed issues was one labeled " 'Constant Manning Procedure' " and another labeled " 'Personnel Reduction.' " (*Ibid.*)

The "Constant Manning Procedure" issue arose from a union proposal "to add one engine company and to increase the personnel assigned to the existing engine companies." (*Vallejo, supra*, 12 Cal.3d 608, 618.) The union abandoned that position, however, and asked only for continuation of the existing " 'manning schedule.' " (*Id.* at p. 619.) The city contended, however, that the decision whether to continue the existing "manpower level in the fire department" was outside the scope of representation. (*Ibid.*)

The "Personnel Reduction" issue arose from a union proposal that would have required the city to bargain "with respect to any decision to reduce the

_____

[2] The MMBA does not require the use of binding arbitration; it was required in *Vallejo* only because the city's charter so provided. (*Vallejo, supra*, 12 Cal.3d 608, 613.)

number of fire fighters." (*Vallejo, supra*, 12 Cal.3d at p. 621.) The city contended that "a decision to reduce personnel" was "not negotiable because it involve[d] the merits, necessity or organization of the fire fighting service." (*Ibid.*)

After the city refused to submit the four disputed issues to binding arbitration under the terms of the city charter, the union petitioned the superior court for a writ of mandate to compel the city to arbitrate those issues.[3] (*Vallejo, supra*, 12 Cal.3d 608, 611–612.) Agreeing with the union that the four disputed matters were within the scope of representation, the superior court granted a peremptory writ of mandate, and the city appealed. (*Ibid.*)

In *Vallejo*, this court agreed with the city that insofar as the "Constant Manning Procedure" proposal was "directed to the question of maintaining a particular standard of fire prevention within the community," it was a matter "solely within the province of management" and thus not a mandatory subject of bargaining. (*Vallejo, supra*, 12 Cal.3d at p. 619.) But this court agreed with the union that insofar as the proposal was related to "questions of employee workload and safety," it was within the scope of representation. (*Ibid.*) In particular, this court found at least potential merit in the union's argument that "the number of persons manning the fire truck or comprising the engine company fixes and determines the amount of *work* each fire fighter must perform" while "the number of persons available to fight the fire directly affects the *safety* of each fire fighter." (*Ibid.*, original italics.) Having found potential merit in the positions of both the city and the union, this court affirmed the superior court's judgment requiring the city to arbitrate. During arbitration, the parties would be able to develop a factual record from which the arbitrator could determine "whether the manpower issue primarily involves the workload and safety of the men ('wages, hours and working conditions') or the policy of fire prevention of the city ('merits, necessity or organization of any governmental service')," and thus whether it was within the scope of representation. (*Id.* at pp. 620–621.)

Regarding the "Personnel Reduction" issue, this court in *Vallejo* similarly found some merit in each party's position. The city was correct that "[a] reduction of the entire fire fighting force based on the city's decision that as a matter of policy of fire prevention the force was too large" would not be within the scope of representation. (*Vallejo, supra*, 12 Cal.3d at p. 621.) The city's position was supported by federal decisions under the NLRA that

---

[3] The union initially sought relief from the superior court, rather than from PERB, because the labor dispute at issue in *Vallejo* arose many years before PERB acquired jurisdiction in MMBA matters, which occurred in 2001. (See § 3509, added by Stats. 2000, ch. 901, § 8, pp. 6607–6608, operative July 1, 2001.)

"indicate that an employer has the right unilaterally to decide that a layoff is necessary." (*Vallejo*, at p. 621.) The same federal decisions also recognized, however, that an employer "must bargain about such matters as the timing of layoffs and the number and identity of the employees affected." (*Ibid.*, italics omitted.)

Here, PERB argues that under this court's decision in *Vallejo, supra*, 12 Cal.3d 608, "an employer does not have an obligation to negotiate the decision to lay off employees, but it must bargain any negotiable effects of the layoff decision." Local 188 argues, on the other hand, that under *Vallejo* a public employer must negotiate over a decision to lay off firefighters if the layoffs will affect the workload and safety of the remaining firefighters. The source of the disagreement is *Vallejo*'s statement that "[t]o the extent . . . that the decision to lay off some employees affects the workload and safety of the remaining workers, *it* is subject to bargaining . . . for the same reasons indicated in the prior discussion of the manning proposal." (*Id.* at p. 622, italics added.) Local 188 insists that the italicized word "it" refers to the layoff decision, whereas PERB and the city argue that it refers merely to the effects of that decision on the workload and safety of the remaining employees.

We agree with PERB and the city. Viewed strictly as a matter of grammar, without considering the rest of the opinion, Local 188's interpretation of the disputed sentence in *Vallejo, supra*, 12 Cal.3d 608, 622, appears plausible. But when the sentence is viewed in the context of the entire opinion, Local 188's interpretation is not supportable. After stressing that the MMBA generally is to be construed in harmony with federal decisions interpreting the NLRA, *Vallejo* cited a federal decision for the proposition that "under the NLRA . . . an employer has the right unilaterally to decide that a layoff is necessary, although it must bargain about such matters as the timing of layoffs and the number and identity of the employees affected." (*Vallejo, supra*, at p. 621, italics omitted, citing *N.L.R.B. v. United Nuclear Corp.* (10th Cir. 1967) 381 F.2d 972.) Thus, the rule adopted in *Vallejo* is that under the MMBA a local public entity may unilaterally decide that financial necessity requires some employee layoffs, although the entity must bargain over the implementation of that decision and its effects on the remaining employees.

This interpretation of *Vallejo, supra*, 12 Cal.3d 608, has since been consistently recognized. We have stated, for example, that, under California's MMBA, "though an employer has the right unilaterally to decide that a layoff is necessary, he must bargain about such matters as the timing of the layoffs and the number and identity of employees affected." (*Los Angeles County Civil Service Com. v. Superior Court* (1978) 23 Cal.3d 55, 64 [151 Cal.Rptr. 547, 588 P.2d 249].) And a Court of Appeal cited and quoted extensively

from *Vallejo* in support of its conclusion that a state agency could unilaterally decide to make some staffing reductions by means of employee layoffs, so long as it provided an opportunity for bargaining over the implementation of that decision. (*State Assn. of Real Property Agents v. State Personnel Bd.* (1978) 83 Cal.App.3d 206, 211–213 [147 Cal.Rptr. 786].) This court then cited that Court of Appeal's decision approvingly for the same proposition. (*Building Material, supra,* 41 Cal.3d 651, 663.)

■   We now reaffirm this rule. Under the MMBA, a local public entity that is faced with a decline in revenues or other financial adversity may unilaterally decide to lay off some of its employees to reduce its labor costs. In this situation, a public employer must, however, give its employees an opportunity to bargain over the implementation of the decision, including the number of employees to be laid off, and the timing of the layoffs, as well as the effects of the layoffs on the workload and safety of the remaining employees. Here, Local 188 has not shown that PERB's refusal to issue a complaint was based on a misunderstanding of this rule, and thus it has not shown that it was based on an erroneous construction of the MMBA. Consequently, as the Court of Appeal concluded, the superior court properly denied Local 188's petition for writ of mandate.

The Court of Appeal's judgment is affirmed.

Werdegar, J., Chin, J., Moreno, J., Corrigan, J., and George, J.,* concurred.

**BAXTER, J.,** Concurring and Dissenting.—The substantive issue in this case is whether the City of Richmond's decision to lay off 18 of its firefighters for fiscal reasons in 2003 is a matter subject to collective bargaining under the Meyers-Milias-Brown Act. (Gov. Code, § 3500 et seq.; MMBA.)[1] The trial court and Court of Appeal concluded it is not. The majority likewise concludes it is not and affirms the judgment. I fully concur in that holding. In finding the city was not obligated to bargain with the International Association of Fire Fighters, Local 188, AFL-CIO (Local 188) over the layoff decision itself, as opposed to meeting and conferring over the effects or impact of the layoffs, we merely reaffirm the holding to that effect reached by this court 36 years ago in *Fire Fighters Union v. City of Vallejo* (1974) 12 Cal.3d 608 [116 Cal.Rptr. 507, 526 P.2d 971] (*Vallejo*). *Vallejo* made clear that although a public employer must bargain with its employees about the timing of layoffs and the number and identity of the employees affected, it need not bargain over the layoff decision itself. (*Vallejo,* at p. 621; see maj. opn., *ante,* at pp. 276–277.) As the majority observes, "[t]his interpretation of *Vallejo, supra,* 12 Cal.3d 608, has since been consistently recognized." (Maj. opn., *ante,* at p. 276.)

---

*Retired Chief Justice of California, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

[1] All further statutory references are to the Government Code unless otherwise indicated.

The majority also reaches and decides an important procedural issue of first impression under the MMBA: Is a decision of the Public Employment Relations Board (PERB) not to issue a complaint on an aggrieved party's unfair labor practice charge, although unreviewable by extraordinary writ in the Courts of Appeal (see § 3509.5, subd. (a)),[2] nevertheless subject to equitable judicial review under the superior courts' traditional mandamus jurisdiction? Invoking this court's holding in *Belridge Farms v. Agricultural Labor Relations Bd.* (1978) 21 Cal.3d 551 [147 Cal.Rptr. 165, 580 P.2d 665] (*Belridge Farms*), the majority concludes that it is. I respectfully dissent from that conclusion. The majority misconstrues the nature and scope of the holding in *Belridge Farms* as well as the authorities relied on therein. Under the majority's holding, PERB's routine exercise of discretion in determining which matters coming before it warrant the issuance of a complaint, and which do not, could be unduly impacted.

In *Belridge Farms*, this court construed the judicial review provisions of the Alatorre-Zenovich-Dunlap-Berman Agricultural Labor Relations Act of 1975 (Lab. Code, § 1140 et seq.; ALRA). We looked to relevant federal court decisions construing the National Labor Relations Act (29 U.S.C. § 151 et seq. (NLRA)) because it contains a judicial review provision "substantively identical" (*Belridge Farms, supra,* 21 Cal.3d at p. 556) to the judicial review provision found in the state ALRA. Acknowledging that those federal decisions establish that a refusal to issue a complaint under the NLRA is generally *not* judicially reviewable, we nonetheless went on to observe that "federal courts have exercised their equitable powers to review such determinations when the complaining party raises a colorable claim that the decision violates [a] constitutional right [citations] or exceeds a specific grant of authority [citations]." (*Belridge Farms,* at pp. 556–557.) We then added, "Refusal to issue a complaint based on an erroneous construction of an applicable statute also has been held reviewable under the court's general equitable power. (*Southern California Dist. Coun. of Lab., Loc. 1184* v. *Ordman* (C.D.Cal. 1970) 318 F.Supp. 633.)" (*Belridge Farms,* at p. 557.)

There is no allegation here that PERB's refusal to issue a complaint on behalf of Local 188 under the MMBA violated the constitutional rights of union members or exceeded a specific grant of authority under which the agency operates. Rather, the majority concludes it is the third prong of the

[2] The MMBA expressly provides for judicial review of PERB decisions in subdivision (a) of section 3509.5, which states: "Any charging party, respondent, or intervenor aggrieved by a final decision or order of the board in an unfair practice case, *except a decision of the board not to issue a complaint in such a case,* . . . may petition for a writ of extraordinary relief from that decision or order." (Italics added.) Subdivision (b) of section 3509.5 in turn provides that such a petition for a writ of extraordinary relief shall be filed in the Court of Appeal. The parties, the Court of Appeal below, and the majority all agree that under the plain language of section 3509.5, PERB's decision not to issue a complaint is not reviewable under that statute.

*Belridge Farms* test that should be applied here. The majority reasons that "although PERB's refusal to issue a complaint is generally not subject to judicial review, this general rule has narrow exceptions. One of these exceptions applies when, as the union alleges here, PERB's refusal is based on a clearly erroneous statutory construction." (Maj. opn., *ante*, at p. 264.) The majority reasons further that applying the third prong of the *Belridge Farms* test to the particular facts before us will "allow[] courts to correct a clearly erroneous construction of the MMBA by PERB when that erroneous construction potentially affects a large class of cases and threatens to frustrate an important policy that the MMBA was enacted to further." (Maj. opn., *ante*, at pp. 269–270.)

The majority's reading of the third prong of the *Belridge Farms* test is far broader than the exception actually described and invoked by this court in that case. After setting forth the three categories of exceptions to the general rule of no judicial review recognized by federal courts in construing the NLRA, the *Belridge Farms* court stated, "As pointed out above, the [Agricultural Labor Relations Board] general counsel's interpretation of statutes is reviewable." (*Belridge Farms, supra*, 21 Cal.3d at p. 559.) The phrase "[a]s pointed out above" (*ibid.*) is a clear reference back to the third exception described at page 557 of the *Belridge Farms* decision. The court in the very next sentence then explained, "In California mandamus is available to compel an official to exercise his discretion when his refusal is based on an erroneous view of the power vested in him. [Citation]." (*Belridge Farms*, at p. 559). Thus, the reference in *Belridge Farms* to the third exception under federal NLRA cases for "an erroneous construction of an applicable statute," found at page 557 of that decision, must be read together with this court's further invocation of the California common law rule allowing for mandamus writ review of an agency official's refusal to exercise statutory discretion "based on an erroneous view of the power vested in him . . . [citation]," found at page 559 of the decision. Properly read and understood in its full context, the decision in *Belridge Farms* leads to but one conclusion. The third exception described and invoked in that case was intended to be limited to situations where an agency official *refuses to exercise discretion* "based on an erroneous view of the [statutory] power vested in him. [Citation.]" (*Belridge Farms*, at p. 559.)

This narrow reading of the third exception invoked in *Belridge Farms* is the only one supported by the holding of the single federal court NLRA decision relied on by this court in *Belridge Farms* in support of that exception: *Southern California Dist. Council of Laborers, Local 1184 v. Ordman* (C.D.Cal. 1970) 318 F.Supp. 633 (*Local 1184*).

In *Local 1184*, "the Regional Director of the [National Labor Relations Board] dismissed plaintiffs' [unfair labor practice] charges on the ground that they had not been filed and served within six months of the signing of the [collective bargaining] agreement and were, therefore, barred by Section 10(b) of the Act, 29 U.S.C. § 160(b). That section provides that '. . . no complaint shall issue based upon any unfair labor practice occurring more than six months prior to the filing of the charge with the Board and the service of a copy thereof upon the person against whom such charge is made. . . .' The Regional Director's dismissal of plaintiffs' charges was sustained by defendant [NLRB]." (*Local 1184, supra*, 318 F.Supp. at p. 634.) The plaintiffs then successfully brought an "action for a declaration that in the case of an agreement between an employer and a union, the six month period of § 10(b) does not commence until there are employees subject to said agreement . . . ." (*Ibid.*)

In other words, the regional director of the NLRB (National Labor Relations Board) in *Local 1184* had erroneously construed section 10(b) of the NLRA as precluding his discretion to issue the complaint. In that narrow context, an exception to the general rule of no judicial review of refusals to issue complaints was available under the federal NLRA cases, permitting the federal district court, under that court's general equitable powers, to review the NLRB's refusal to exercise discretion to issue the complaint based on its erroneous view that it had no power to do so under section 10(b).

The federal district court in *Local 1184* acknowledged that, under the general rule, it had " 'no power to order the General Counsel to issue a complaint . . .' [citation]" (*Local 1184, supra*, 318 F.Supp. at p. 636), and further acknowledged "[i]t is well established that the General Counsel has broad discretion in deciding whether a complaint should issue. [Citation.]" (*Ibid.*) The court took pains to describe the matter before it as one involving "peculiar facts," making it "an extreme case which compels limited judicial action." (*Ibid.*) The court ultimately determined it would "not direct the defendant [(NLRB)] to issue a complaint based on plaintiffs' charges nor will the Court review the defendant's day-to-day exercise of discretion with respect to determinations delegated to the latter's expertise." (*Local 1184*, at p. 636.) The court added, "If, *after considering the merits of plaintiffs' charges*, defendant concludes that no complaint should issue, no judicial review of defendant's determination may be had. See 29 U.S.C. § 159(d)." (*Local 1184*, at p. 636, italics added.) This final comment reflects the court's view that it was the agency's erroneous construction of the statute *and* its refusal to exercise discretion or even consider the merits of the plaintiffs' claims as a result of that erroneous construction that warranted judicial

review of the agency's interpretation of the statute. The comment further makes clear that once the statutory interpretation issue was settled, the court would not second-guess any subsequent exercise of discretion by the NLRB as to whether to issue or not issue a complaint in the matter. (*Local 1184*, at p. 636.)

To summarize, *Belridge Farms*'s characterization of the third exception to the general rule of no judicial review of agency refusals to issue complaints under analogous federal court NLRA decisions establishes only that the exception was intended by this court to apply in ALRA cases in those limited situations where an agency official has refused to exercise discretion to issue a complaint based on an erroneous interpretation of an applicable statute, leading the official to conclude he or she has no discretion or power to act. (*Belridge Farms, supra*, 21 Cal.3d 551.)

The facts of this case are entirely inapposite. Here, PERB did not refuse to issue the complaint sought by Local 188 based on an erroneous interpretation of an applicable statute leading the board to conclude it had no discretion or power to act. Rather, PERB correctly interpreted long-standing settled case law establishing that, although a public employer must meet and confer with its employees about the effects of employee layoffs, it need not bargain over the layoff decision itself. (E.g., *Vallejo, supra*, 12 Cal.3d at pp. 614, 621.) PERB further properly exercised discretion pursuant to its statutory authority in refusing to issue the complaint. Section 3541.3, concerning the powers and duties of the board under the MMBA, provides that, "The board shall have all of the following powers and duties: [¶] . . . [¶] (b) To determine in disputed cases whether a particular item is within or without the scope of representation." (§ 3541.3, subd. (b).) The substantive question here is whether bargaining over the layoff decision itself is or is not within the scope of representation. The law could not be more clear. It is not.

Furthermore, in exercising its statutory discretion not to issue a complaint, PERB took into consideration both the facts and legal merits of Local 188's unfair labor practice charge against the city. PERB's agent, Regional Attorney Kristin L. Rosi, informed Local 188 in writing why the board had declined to issue a complaint in response to the union's original unfair practice claim. "The letter stated that Local 188's unfair practice allegations failed to state a prima facie case for relief because a decision to lay off employees, including firefighters, is not subject to collective bargaining and because, although the effects of a layoff decision are subject to bargaining, Local 188 had made no proposals concerning the effects of the city's decision to lay off firefighters and the city had not declined to bargain concerning them." (Maj. opn., *ante*, at p. 265.) As noted above, in *Local 1184, supra*, 318 F.Supp. 633, the sole federal decision relied on in *Belridge Farms* for invoking the third exception,

the NLRB had failed to even consider the merits of the aggrieved plaintiffs' unfair labor practice charge before erroneously concluding it had no discretion under the statute in question to issue a complaint. (*Local 1184*, at p. 636.)

The majority suggests the role of the courts in resolving this procedural issue of first impression is to "strike[] an appropriate balance between the Legislature's interest in giving [an agency like PERB] broad discretionary authority and the courts' obligation to discharge their constitutional powers and responsibilities." (Maj. opn., *ante*, at p. 269.) I fail to see how the majority's holding on this issue strikes an appropriate balance. At oral argument in this matter, counsel for PERB represented to this court that a major component, if not the majority, of its workload involves making determinations as to whether to issue or not issue complaints on allegations of unfair labor practices under the MMBA. Under the majority's broadly worded holding, an aggrieved party need only allege that PERB's refusal to issue a complaint was based on "an erroneous statutory construction" (maj. opn., *ante*, at p. 271) of any of the MMBA's provisions in order to secure equitable judicial writ review in the superior court of a PERB decision not to issue a complaint. The majority concludes this rule of equitable review will "further[] the Legislature's purpose in creating the agency and defining the scope of its authority." (Maj. opn., *ante*, at p. 270.) I disagree. If anything, the majority's holding on this issue contradicts the Legislature's plain intent to narrowly circumscribe judicial review of PERB decisions in section 3509.5, which statute expressly excepts from the availability of extraordinary writ relief in the Courts of Appeal "a decision of the board not to issue a complaint . . . ." (§ 3509.5, subd. (a).)

I further fail to see how, even under the majority's broad reading of *Belridge Farms*, the third exception to the general rule of no judicial review could possibly be satisfied on the factual record before us. We are, after all, today reaffirming as a substantive point of law that a city's decision to lay off some of its employees for fiscal reasons is not a matter subject to collective bargaining under the MMBA. We have observed that this has been the settled law ever since *Vallejo, supra*, 12 Cal.3d 608, was decided many years ago. (Maj. opn., *ante*, at p. 276.) PERB unquestionably acted within the scope of its statutory authority when it exercised its discretion and determined not to issue a complaint below. (See § 3541.3, subd. (b).) That being the case, how can the majority conclude, on the one hand, that Local 188's substantive law claim is unmeritorious in light of long-standing settled law, and then find, on the other hand, that the union did raise a "colorable claim" (*Belridge Farms, supra*, 21 Cal.3d at p. 556) that PERB's refusal to issue the complaint was "based on an erroneous statutory construction." (Maj. opn., *ante*, at p. 271.) If this PERB decision not to issue a complaint is subject to equitable judicial

review in the superior court based on the agency's erroneous interpretation of an applicable statute, it is hard to envision one that would not be.

The majority observes that both the United States Supreme Court and this court have explained that "eliminating all forms of judicial review of an administrative agency's decisions could raise serious constitutional issues." (Maj. opn., *ante*, at p. 270.) The majority further observes that "[t]he California Constitution [(in § 10 of art. VI)] gives rise to a presumption in favor of at least limited judicial review of state administrative agency actions." (Maj. opn., *ante*, at p. 270.) I do not disagree with these observations. But, as noted, in California, "[a]ny charging party, respondent, or intervenor aggrieved by a final decision or order of the board in an unfair practice case, *except a decision of the board not to issue a complaint in such a case*, . . . may petition for a writ of extraordinary relief from that decision or order." (§ 3509.5, subd. (a), italics added.)

If it was alleged here that PERB's refusal to issue a complaint somehow exceeded the board's statutory powers or violated the union members' constitutional rights, I would not hesitate to find that the superior court's equitable mandamus jurisdiction could rightfully be invoked to review such a determination, nor would I think it necessary to invoke the specific holding in *Belridge Farms* to support that conclusion. Moreover, if PERB had erroneously interpreted a statutory provision as precluding its discretion or power to act and issue a complaint on Local 188's unfair labor practice charge, I would join the majority in finding that our decision in *Belridge Farms* is sufficiently analogous to support a conclusion that the superior court's traditional mandamus jurisdiction may be invoked to review the board's legal determinations in that regard. But, here, the substantive point of law underlying the union's unfair labor practice charge has long been settled in favor of the city's actions, and PERB, rather than acting unconstitutionally, or in excess of its statutory powers, or through a mistaken belief that it had no authority to act, simply applied settled law to these particular facts and found no legal or factual basis to issue a complaint. Accordingly, I conclude the Court of Appeal erred in finding our decision in *Belridge Farms* sufficiently analogous to establish a basis for extraordinary writ review in the superior court of the board's decision not to issue a complaint on these facts.

I therefore join the majority in affirming the Court of Appeal's judgment to the extent that judgment holds that the city's decision to lay off 18 of its firefighters was not subject to collective bargaining under the MMBA. Unlike the majority, however, I would further conclude that the Court of Appeal erred in determining that the holding in *Belridge Farms, supra,* 21 Cal.3d 551, could serve as a proper basis for equitable judicial review of Local 188's

claim in the superior court. When the Court of Appeal first dismissed Local 188's petition for extraordinary writ review, recognizing it was without jurisdiction to act by virtue of the express provisions of section 3509.5, subdivision (a), that dismissal should have been with prejudice.